# Illinois Official Reports

## Supreme Court

---

### *People v. Cregan*, 2014 IL 113600

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CARLOS CREGAN, Appellant. |
| Docket No. | 113600 |
| Filed<br>Rehearing denied | February 21, 2014<br>May 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a defendant was pulling a wheeled luggage bag when he was arrested on a civil arrest warrant for failure to pay child support, the bag was in his immediate physical possession, was immediately associated with him, and was searchable in a search of his person incident to the arrest—suppression of cocaine properly refused. |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of McLean County, the Hon. Charles G. Reynard, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Michael J. Pelletier, State Appellate Defender, Karen Munoz, Deputy Defender, and Amber E. Corrigan and Ryan R. Wilson, Assistant Appellate Defenders, of the Office of the State Appellate Defender, of Springfield, for appellant.

Lisa Madigan, Attorney General, of Springfield, and Ronald Dozier, State's Attorney, of Bloomington (Michael A. Scodro, Solicitor General, and Michael M. Glick and David H. Iskowich, Assistant Attorneys General, of Chicago, of counsel), for the People.

Justices

CHIEF JUSTICE GARMAN delivered the judgment of the court, with opinion.

Justices Thomas, Kilbride, Karmeier, and Theis concurred in the judgment and opinion.

Justice Burke dissented, with opinion, joined by Justice Freeman.

**OPINION**

¶ 1 The circuit court of McLean County convicted defendant, Carlos Cregan, of possession of a controlled substance, after denying defendant's motion to suppress evidence from a search accompanying his arrest for failure to pay child support. The appellate court held the search valid under the search-incident-to-arrest exception to the search warrant requirement. 2011 IL App (4th) 100477. For the reasons that follow, we affirm.

¶ 2 I. BACKGROUND

¶ 3 Carlos Cregan was charged with unlawful possession of less than 15 grams of cocaine, a controlled substance (720 ILCS 570/402(c) (West 2008)). He filed a motion to suppress evidence, arguing the search that led to discovery of the controlled substance violated his fourth amendment right to be free from unreasonable searches. At a hearing on the motion, the court heard testimony from two Normal police officers, Kevin Kreger and Christopher Nyman. The defendant also testified.

¶ 4 The Normal police department had received a tip that defendant would arrive by train on November 3, 2009, and that defendant had an active warrant for his arrest. Officers Kreger and Nyman were assigned to a multijurisdictional unit focused on gangs and drug activity. They

- 2 -

learned that defendant was a documented member of the Satan Disciples gang while confirming the arrest warrant's validity. The McLean County civil warrant sought defendant's arrest for failure to pay child support. Kreger, Nyman, and a third officer waited at the train station for defendant's arrival, just after 9:30 p.m. The officers approached defendant, placed him under arrest and handcuffed him, and searched his two bags. Defendant did not resist or try to access his bags once he was in handcuffs. The witnesses' accounts vary somewhat as to the exact sequence of events.

¶ 5    Officer Kreger testified that defendant was alone when he exited the train, and that the officers approached and reached him before anyone else arrived. A woman, later identified by defendant as his friend Lindsey Collins, approached on the platform as the officers confirmed defendant's identity and completed his arrest. Kreger testified that defendant had a "laundry bag" over his shoulder and a "wheeled luggage bag." The wheeled bag was closed with zippers and had no lock on it. Kreger's testimony was somewhat ambiguous as to how defendant moved the wheeled bag, stating both that defendant was "carrying" it and rolling it by the handle. He testified unambiguously, however, that defendant was in possession of both bags. Kreger testified that it was his intention to bring the bags into custody with defendant, as defendant was alone, and that he intended to conduct an inventory search of the bags, pursuant to department policy. Defendant asked if his bags could be turned over to his friend Collins, but Kreger told him the bags had to be searched first. The defendant was handcuffed at the time Kreger searched his bags.

¶ 6    Officer Nyman testified that defendant got off the train with two other people, then departed from them to approach a woman. Nyman testified that defendant approached her before officers reached him, but that officers reached defendant immediately afterward. Nyman testified that defendant was "carrying two bags" and was holding the handle of the rolling bag when officers told him he was under arrest. Nyman also testified that gang members are "known to carry weapons," so the officers had safety concerns in making the arrest and search. Nyman said at the time of arrest, officers were not aware defendant had a prior conviction for a weapon offense.

¶ 7    Defendant testified that he exited the train while talking to people he had met on it, then saw that his friend Lindsey Collins was waiting to give him a ride. Defendant approached her, put his bags down, and gave her a hug. At that point, she whispered, "I hope they are not here for you," referring to the police officers. Officers then approached and confirmed defendant's identity, placing him under arrest. Defendant asked if Collins could take his bags, and the officers said they "had to check them out first." The officers then wheeled the bags to the side of the station and began searching the bags in defendant's presence. The exact distance between defendant's location when he was handcuffed and where his bags were searched is not clear from any witness's testimony. However, defendant's testimony was that he and Collins met on the walkway between the train and the station. The officers then wheeled the bags over to the side of the station to search them.

¶ 8    While searching defendant's bags, Kreger found a jar of hair gel. Its appearance was not noteworthy. Opening it to look within, he found a bag containing powder cocaine. Defendant moved to suppress that evidence. After hearing testimony from Kreger, Nyman, and defendant, the circuit court ruled the bags were within defendant's control at the time of the

arrest. The circuit court also noted that defendant's status as a gang member "obviously played a role not only in [the officers'] concern about what might be within the immediate control of the Defendant, but some other unspecified concern," and reasoned there was little distinction to be made between defendant having access to a weapon and giving a friend of defendant access to a weapon. The trial court considered the search to be an "inventory search *** conducted incident to the Defendant's arrest."

¶ 9 Defendant was convicted in a stipulated bench trial and sentenced to five and one-half years' imprisonment. On appeal, defendant contended the search of his luggage was not a valid search incident to arrest. The State argued that issue was forfeited because defendant failed to raise it in a written posttrial motion. The State argued in the alternative that the trial court properly denied the motion to suppress, because the search was valid incident to defendant's arrest.

¶ 10 The appellate court examined this court's ruling in *People v. Enoch*, 122 Ill. 2d 176, 190 (1988), and its own precedent in *People v. Cox*, 295 Ill. App. 3d 666, 670 (1998), and concluded defendant did not forfeit his challenge to the search, because it is a constitutional issue raised in the trial court and cognizable in a postconviction petition. The appellate court concluded the search was valid incident to defendant's arrest, because the bags were immediately associated with his person, similar to the arrestee's purse in *People v. Hoskins*, 101 Ill. 2d 209 (1984). The appellate court also held the search was not limited to a brief search for weapons. The officers were allowed to conduct a thorough search for weapons, including the hair gel container located inside the luggage. The appellate court, therefore, affirmed the trial court's judgment. 2011 IL App (4th) 100477.

¶ 11 We allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 12                                II. ISSUES

¶ 13 This appeal concerns whether the warrantless search of defendant's bags violated his right to be free from unreasonable searches, or whether that search was reasonable under the search-incident-to-arrest exception to the warrant requirement. The defendant's chief argument is that the search of his bags exceeded the permissible scope of a search incident to arrest—being handcuffed, he presented no threat he might access the bags to produce a weapon or destroy evidence. Relying on *Arizona v. Gant*, 556 U.S. 332 (2009), defendant argues the search of his bags did not qualify for this exception to the warrant requirement. The State counters that defendant still had access to his bags and presented a threat that justified a search of the area within defendant's control pursuant to his arrest. The State renews its argument that defendant forfeited his challenge to the search by failing to raise it in a posttrial motion. As a threshold matter, we take up the question of forfeiture first.

¶ 14                                Forfeiture

¶ 15 To preserve an issue for review, a party ordinarily must raise it at trial and in a written posttrial motion. *Enoch*, 122 Ill. 2d at 186. Defendant acknowledges he failed to raise his challenge to the search in a posttrial motion.

¶ 16 In *Enoch*, however, this court held three types of claims are not subject to forfeiture for failing to file a posttrial motion: (1) constitutional issues that were properly raised at trial and

- 4 -

may be raised later in a postconviction petition; (2) challenges to the sufficiency of the evidence; and (3) plain errors. *Id.* at 190. In holding defendant's challenge to the search was not forfeited, the appellate court relied on the constitutional-issue exception.

¶ 17    The State contends that *Enoch* was a capital case, and the constitutional-issue exception stems from the special scrutiny exercised by this court in reviewing those cases. The State, therefore, maintains that the constitutional-issue exception applies only to capital cases, and the appellate court erred in relying on that exception in this noncapital case.

¶ 18    Contrary to the State's argument, the constitutional-issue exception recognized in *Enoch* is based primarily in the interest of judicial economy. The Post-Conviction Hearing Act provides a mechanism for criminal defendants to assert that a conviction or sentence resulted from a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. 725 ILCS 5/122-1(a) (West 2008). Postconviction proceedings permit inquiry into constitutional issues that were not, and could not have been, adjudicated on direct appeal. *People v. English*, 2013 IL 112890, ¶ 22. If a defendant were precluded from raising a constitutional issue previously raised at trial on direct appeal, merely because he failed to raise it in a posttrial motion, the defendant could simply allege the issue in a later postconviction petition. Accordingly, the interests in judicial economy favor addressing the issue on direct appeal rather than requiring defendant to raise it in a separate postconviction petition.

¶ 19    The State's argument that *Enoch* created special forfeiture rules for capital cases is likewise undermined by the other forfeiture exceptions recognized in *Enoch*. In addition to the constitutional-issue exception, *Enoch* observed that challenges to the sufficiency of the evidence and plain errors are not forfeited by failure to raise them in a posttrial motion. Challenges to the sufficiency of the evidence and plain errors are forfeiture exceptions that apply to all criminal cases, not just capital cases. We conclude that the forfeiture exceptions from *Enoch* apply to both capital and noncapital cases.

¶ 20    Defendant's motion to suppress asserts a violation of his constitutional right to be free from unreasonable searches and seizures. The constitutional-issue exception applies because defendant raised the issue at trial and could have raised it later in a postconviction petition. Accordingly, we conclude that the appellate court did not err in applying the constitutional-issue exception to forfeiture in this case.

¶ 21                                Standard of Review

¶ 22    In reviewing a ruling on a motion to suppress, this court gives great deference to the trial court's findings of fact and will reverse those findings only if they are against the manifest weight of the evidence. *People v. Bridgewater*, 235 Ill. 2d 85, 92 (2009). We review *de novo* the trial court's legal ruling on whether evidence should be suppressed. *Id.* at 92-93.

¶ 23    The defendant bears the burden of proof on a motion to suppress evidence. 725 ILCS 5/114-12(b) (West 2008); *People v. Lampitok*, 207 Ill. 2d 231, 239 (2003). If the defendant makes a *prima facie* showing that the evidence was obtained in an illegal search or seizure, the burden shifts to the State to provide evidence to counter the defendant's *prima facie* case. *People v. Gipson*, 203 Ill. 2d 298, 306-07 (2003). The ultimate burden of proof remains with the defendant, however. *Id.* at 307.

Warrantless searches are *per se* unreasonable under the fourth amendment, subject to a few specific exceptions. *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Among the exceptions is a search incident to arrest. *Gant*, 556 U.S. at 338. A search incident to arrest falls under two lines of analysis: search of the person of the arrestee and search of the area under the control of the arrestee. *United States v. Robinson*, 414 U.S. 218, 224 (1973).

In this case, defendant made a *prima facie* case that the evidence was obtained illegally by showing the officers searched his luggage without a warrant. See *Gipson*, 203 Ill. 2d at 307 (defendant made a *prima facie* case by showing an officer searched the trunk of his car without a warrant). To counter defendant's *prima facie* case, the State maintains the search was valid under the search-incident-to-arrest exception to the warrant requirement.

The appellate court held that the search of defendant's luggage was valid incident to his arrest under this court's decision in *Hoskins*. In *Hoskins*, the defendant ran from police officers after being told she was under arrest for prostitution. As she fled, the defendant either threw her purse to the ground or dropped it. One of the officers caught defendant, subdued her, and handcuffed her behind her back. The other officer searched defendant's purse, finding an envelope containing a hypodermic syringe and cocaine. *Hoskins*, 101 Ill. 2d at 212. This court held the search was valid incident to the defendant's arrest under the Supreme Court's decision in *United States v. Robinson*, 414 U.S. 218 (1973). *Hoskins*, 101 Ill. 2d at 216.

In *Robinson*, the Supreme Court distinguished between two types of search incident to arrest: the search of the person arrested and the search of the area within his control. *Robinson*, 414 U.S. at 224. These searches serve different purposes and are justified by different concerns. A search of the person incident to his arrest is based on the need to disarm the individual and to discover evidence. However, the search need not be justified by probable cause to search for weapons or evidence; the search of the person requires no additional justification beyond the fact of his lawful custodial arrest, which is itself justified by probable cause. *Id.* at 235.

> "The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Id.*

The search of the area of the arrest, on the other hand, must be justified by the possibility that the arrestee might gain possession of a weapon or destroy evidence. The scope of an area search is, therefore, limited to the area within the arrestee's immediate control. *Gant*, 556 U.S. at 335.

Whether *Hoskins* Survived *Gant*

On appeal to this court, defendant argues this court's decision in *People v. Hoskins* is no longer good law following the United States Supreme Court's 2009 decision in *Arizona v.*

*Gant*. Defendant observes that in *Gant*, the Supreme Court reaffirmed the long-standing principle that police officers may search incident to arrest only the area within an arrestee's immediate control, meaning the area where he might gain possession of a weapon or destructible evidence. *Gant*, 556 U.S. at 335 (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). Although *Gant* involved the search of a vehicle, defendant maintains the reasoning of that case applies to all searches incident to arrest, abrogating both *New York v. Belton*, 453 U.S. 454, 459-63 (1981) (upholding searches of vehicle and all containers within upon the arrest of an occupant), and *Robinson*, 414 U.S. at 234-36 (upholding searches of arrestee's person and containers within pockets, irrespective of individualized likelihood of a weapon or evidence of the arrest offense). Defendant contends this court's holding in *Hoskins*, that items immediately associated with an arrestee's person may be searched with no additional justification other than a lawful arrest, can no longer be sustained. Accordingly, defendant contends the appellate court erred in upholding the search of his luggage under *Hoskins*.

¶ 32    Defendant reads *Gant* to have a broad reach. In *Gant*, the Supreme Court clarified the search-incident-to-arrest exception as applied to vehicle searches in *Belton*. *Gant*, 556 U.S. at 338. The Court observed *Belton* had been "widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Id.* at 341. The Court held that the broad reading of *Belton* untethered the rule from the justifications underlying the exception for search of a vehicle incident to arrest. *Id.* at 343. A search of the area of the arrest must be justified by the possibility that the arrestee might gain possession of a weapon or destroy evidence. *Id.* at 339; *Chimel v. California*, 395 U.S. 752, 762-65 (1969). Based on the fundamental principles underlying *Chimel*, the Court rejected the broad reading of *Belton* and held that police officers may "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant*, 556 U.S. at 343. The decision in *Gant* thus clarified and limited the search-incident-to-arrest exception as applied to vehicles.

¶ 33    *Hoskins*, however, relied on *Robinson*'s rule for search of the *person* incident to arrest. "The search of the purse here was proper under *Robinson* as incident to the defendant's lawful arrest. [Citations.] Thus, *Robinson* authorizes a warrantless search of the defendant's purse, which is immediately associated with defendant's person, simply on the lawful, custodial arrest." *Hoskins*, 101 Ill. 2d at 217. The *Hoskins* court separately considered arguments about an inventory search, abandonment of the property, and the search of an area for evidence of an offense. *Id.* at 218-21. Yet these parallel considerations do not alter or undermine the *Hoskins* court's ruling on the purse as an object "immediately associated" with the person of the arrestee: that *Robinson* allows such a search.

¶ 34    Defendant does not point to, and we do not find, any portion of the *Gant* decision that indicates abrogation of *Robinson*'s holding on search of the person incident to arrest. In no prior case has the Supreme Court used the area of the arrestee's control as a limit on the search of a *person* incident to arrest, and at no point in *Gant* is such a limit imposed. Indeed, the Supreme Court continues to cite *Robinson* for a *per se* rule allowing a full search of the arrestee's person incident to arrest without additional justification other than the lawful arrest. In *Maryland v. King*, 569 U.S. ___, ___, 133 S. Ct. 1958, 1970-71 (2013), the Supreme Court reaffirmed the ruling in *Robinson*, stating:

" 'The validity of the search of a person incident to a lawful arrest has been regarded as settled from its first enunciation, and has remained virtually unchallenged.' *United States v. Robinson*, 414 U.S. 218, 224 (1973). Even in that context, the Court has been clear that individual suspicion is not necessary, because '[t]he constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search.' "

We therefore conclude *Gant* does not apply to a search incident to arrest of the defendant's person or items immediately associated with the defendant's person. The search in those circumstances is still controlled by the Supreme Court's decision in *Robinson*. Our decision in *Hoskins*, based on the rule in *Robinson*, is undisturbed by *Gant*.

¶ 35                            Whether *Hoskins* Governs the Present Case

¶ 36    Having concluded that this court's ruling in *Hoskins* survives the United States Supreme Court's decision in *Gant*, we now consider whether *Hoskins* applies to the search of defendant's bags. When the object searched is an item of moveable personal property other than the clothing on the arrestee's back or an item contained inside his clothing, as in a pocket (see *Robinson*, 414 U.S. at 220-24 (approving search of cigarette pack found in arrestee's coat pocket)), the question arises whether this situation should be analyzed as a search of the person or as a search of the area within his control.

¶ 37    In holding the defendant's purse was immediately associated with her person, *Hoskins* distinguished the Supreme Court's decision in *United States v. Chadwick*, 433 U.S. 1 (1977). *Hoskins*, 101 Ill. 2d at 214-15. The *Chadwick* Court held that the search of a 200-pound double-locked footlocker belonging to the defendants was not justified as a search of the area under their control. When Chadwick and his two associates were arrested, one was sitting in the front seat of a car while the other two were standing near the back of the car, after having lifted the footlocker into the trunk. Before the trunk could be closed and the engine started, police officers arrested all three men. *Chadwick*, 433 U.S. at 4. The police took the footlocker into their "exclusive control" and transported it to the Federal Building, where it was searched an hour and a half later, revealing a large quantity of marijuana. *Id.*

¶ 38    After rejecting the government's argument that the search of the footlocker, a moveable item, was justified under the same logic as the "automobile exception" to the warrant requirement (*id.* at 12-13), the Court turned to the question of whether it was properly searched incident to arrest (*id.* at 14). The government argued that the search was permissible because the footlocker was in the respondents' possession when they were arrested. *Id.* Significantly, the government conceded that at the time of the arrests, "the footlocker was not within respondents' immediate control." *Id.*

¶ 39    The Court noted that a search incident to arrest has two components, the search of the arrestee's person and the search of the area " 'within his immediate control.' " *Id.* (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). Given the government's concession in *Chadwick* on the question of "immediate control," the facts that the footlocker was double-locked and could not have been accessed by any of the defendants, that it was too large and heavy to have been carried away had one of them attempted to flee, and that it was secured

by the police and transported to the Federal Building, combined with the delay before the search was conducted, the Court held that the search was not justified by the need to search the area within the defendants' control as part of a search incident to arrest.[1] *Id.* at 15.

¶ 40 The Court, however, did not specifically consider whether the footlocker could have been searched as part of a search of the persons of the three defendants, perhaps because, given the size, weight, and location of the item, such an argument by the government would have been fruitless. The Court did hold that "warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the 'search is remote in time or place from the arrest,' [citation] or no exigency exists." *Id.* The Court did not make any specific mention of the permissible scope of a search of a person incident to his arrest, because the issue was not raised in *Chadwick*.

¶ 41 *Chadwick* also represents the only time the Court used the phrase "immediately associated" in the context of a search incident to arrest. Thus, *Chadwick* counsels that a locked 200-pound footlocker, if seized during an arrest and searched at a remote location at a later time, is "not immediately associated" with an arrestee, but the Court has not provided an example of an object that would qualify as "immediately associated" with a person being arrested. Nevertheless, the Court's statement that the footlocker was an item "not immediately associated with the person of the arrestee" has come to mean that a search of the person incident to his arrest may extend only to those items that are "immediately associated" with him. See, *e.g.*, *People v. Hoskins*, 101 Ill. 2d 209 (1984) (holding that a defendant's purse was immediately associated with her person and, thus, could be searched incident to her arrest).

¶ 42 *Hoskins* and other cases have determined that an arrestee's clothing, wallet, and other small items of personal property can be "immediately associated" with him and, thus, subject to search. See, *e.g.*, *People v. Dillon*, 102 Ill. 2d 522, 529 (1984) (holding that search of defendant's wallet following his arrest was proper); *United States v. Maldonado-Espinosa*, 968 F.2d 101, 104 (1st Cir. 1992) (search of carry-on bag placed on a table next to handcuffed suspect valid as incident to arrest because it was within reach of arrestee); *United States v. Johnson*, 846 F.2d 279, 282-84 (5th Cir. 1988) (finding search of a briefcase incident to lawful arrest valid); *United States v. Gomez*, 807 F. Supp. 2d 1134, 1143-44 (S.D. Fla. 2011) ("Historically *** the broad grant of authority to search [incident to arrest] includes highly private articles on a person like a wallet or purse, a briefcase, a backpack or personal bag, [or] an address book or organizer ***."); *State v. Smith*, 835 P.2d 1025 (Wash. 1992) (*en banc*) (holding that search of a defendant's "fanny pack" was valid incident to arrest despite the defendant being handcuffed at the time of the search).

¶ 43 The question presented by the present case is what type of "association" is required before a bag or other receptacle, not small enough to be contained inside clothing, see *Robinson*, 414 U.S. at 220, or carried as a purse, *Hoskins*, 101 Ill. 2d at 215, meets this requirement. Defining

---

[1]In a footnote, the Court explained that marijuana was also found in the men's suitcases. Because the petition for *certiorari* questioned only the appellate court's suppression of the evidence in the footlocker, the Court "need not pass on the legality of *** the search of the suitcases." *Id.* at 5 n.1. Thus, because this question was expressly not answered, *Chadwick* cannot be read to hold that an arrestee's suitcase or other bag can never be searched as part of a search of his person incident to his arrest.

"immediately associated" in terms of the nature or character of the object rather than in terms of the defendant's connection to the object at the time of arrest results in an unworkable rule and produces unpredictable results.

¶ 44     A formalist categorization of possessions would only sow confusion. For example, one might be tempted to misread *Chadwick* as stating that "luggage" is by its nature not "immediately associated" with an arrestee's person.[2] But "luggage" refers to "something that is lugged; *esp :* the belongings that a traveler carries with him" or to "suitcases, traveling bags, and other articles containing a traveler's belongings." Webster's Third New International Dictionary 1344 (2002). While some items are designed to be used as luggage, they may be used for other purposes; other items such as satchels and tote bags are used as luggage even though not intended primarily for that purpose. In this particular case, the officers knew that defendant was traveling; that is why they were waiting for him at the train station. Thus, any bag that he was carrying, including his bag of dirty laundry, could be called "luggage."

¶ 45     However, the same bag in different circumstances might not have been "luggage." Indeed, the photograph of the bag shows a soft-sided black nylon bag with a zipper closure and two handles that would allow for the bag to be carried over the arm or over the shoulder. The bag also has two wheels and a retractable handle. The dimensions of the bag are not provided in the record, but it appears to be the size of a typical gym bag or duffle bag. If used to carry textbooks to university classes or basketball shoes to a health club, it would not fall into the category of "luggage."

¶ 46     The difficulty of categorizing bags as "luggage" extends beyond the present case. A large purse cannot necessarily be distinguished from a small suitcase based only on outward appearances. Some women carry large quilted fabric bags as purses; others use the same bags as luggage when traveling. Some purses are designed to look like backpacks; some people use actual backpacks as purses; others use backpacks as luggage. Some backpacks have wheels and a retractable handle, like the bag at issue in the present case. A gym bag can be used as luggage or to carry shoes and exercise wear. A golf bag may be carried during a round of golf, or by a golfer who is traveling.

¶ 47     A classification based on other factors would be similarly elusive. A learned treatise on search and seizure suggests that only those items that have an "intimate connection with a person" can be considered "immediately associated" with him. 3 Wayne R. LaFave, Search

---

[2]A closer examination, however, reveals the Court was speaking of separating possessions from the arrestee by a significant distance or for a significant period of time before the search:

> "Once law enforcement officers have reduced *luggage or other personal property not immediately associated with the person* of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." (Emphasis added.) *Chadwick*, 433 U.S. at 15.

The phrase "not immediately associated" modifies both "luggage" and "other personal property." *Chadwick* cannot support a *per se* rule against searching luggage. This sentence addressed the government's argument that the search of the footlocker was justified as a search of the *area* of the arrest. As noted above, the Court did not consider whether the *Chadwick* search might have qualified as a search of the person.

and Seizure § 5.5, at 283 (5th ed. 2012). Professor LaFave refers specifically to "small" items, but the size of an object does not necessarily determine its connection to an individual. One can hypothesize any number of scenarios where a large object has an intimate connection to an individual—a prosthetic limb, a wheelchair, a stuffed animal, or a musical instrument being carried in a case. In any event, the professor's analysis of existing law is descriptive, not prescriptive. We conclude no principled distinction can be found in the size difference between a purse and the bag at issue, or in a more subjective notion like its intimate connection to the defendant.

¶ 48    Likewise, the length of time the defendant has spent with a possession cannot adequately mark the line of immediate association. This is information that arresting officers generally will not know. In the present case, the officers had no way of knowing whether the bag was in defendant's possession during his entire trip or whether he left it in the baggage corral in the train car. Even if available, such information would be irrelevant to whether the object was immediately associated with the defendant at the time of his arrest.

¶ 49    Such analysis would leave law enforcement officers, prosecutors, and judges wondering whether it is the size, shape, materials, function, or some other attribute of an object, its proximity to the defendant, or some combination of these factors that determines whether it is "immediately associated" with the defendant's person. The Court has "traditionally recognized that a responsible Fourth Amendment balance is not well served by standards requiring sensitive, case-by-case determinations of government need, lest every discretionary judgment in the field be converted into an occasion for constitutional review." *Atwater v. City of Lago Vista*, 532 U.S. 318, 347 (2001). We thus reject a formalist categorization of bag type or an inquiry into degree of attachment.

¶ 50    In sum, we conclude that personal items such as cigarette packs found in pockets, wallets, or purses may be searched incident to arrest not because they are by their very nature particularly personal to the individual, but because they are in such close proximity to the individual at the time of his arrest. In these cases, the personal nature of the object is merely a proxy for its presence in the individual's possession. The true measure of whether an object, whether it is a cigarette pack or a suitcase, is "immediately associated" with an arrestee is whether he is in actual physical possession of the object at the time of his arrest. See, *e.g.*, *United States v. Matthews*, 532 F. App'x 211 (3d Cir. 2013) (holding that search of arrestee's backpack was permissible under the fourth amendment because it was in his possession at the time of his arrest and had to be transported with him to the police station); *United States v. Gordon*, 895 F. Supp. 2d 1011 (D. Haw. 2012) (search of arrestee's duffel bag, which he was carrying over his shoulder at the time of his arrest, was proper as search incident to arrest, despite his being handcuffed and in custody at the time of the search).

¶ 51    Under this test if the arrestee is, at the time of his arrest, in actual physical possession of a bag, it is immediately associated with the arrestee and is searchable, whether it is a bag of groceries being carried or wheeled in a "grannie cart," a duffle bag slung over one shoulder, or a nylon bag being pulled behind him on wheels. The use to which the bag is being put—as luggage for a traveler or to haul dirty clothing to a laundromat is whether he is in actual physical possession of the object. If it is not in his actual physical possession, like the

footlocker in *Chadwick*, a warrantless search may be justified on some other basis, but not as a search of the person incident to his arrest.

¶ 52 Such a test is consistent with the Court's holdings in *Robinson*, *Chadwick*, and *Gant*, with this court's holding in *Hoskins*, and the Seventh Circuit's holding in *United States v. Garcia*, 605 F.2d 349 (7th Cir. 1979) (holding that search of hand-carried luggage incident to lawful custodial arrest did not violate the fourth amendment).[3] Its application is also clear.

¶ 53 Applying the rule of possession to this case, the search of defendant's bag was legal. Officer Kreger testified that he saw defendant get off the train and walk away "wheeling the luggage bag and had the laundry bag sling [*sic*] around his shoulder." The officers approached defendant and were speaking to him when the woman, Lindsey Collins, approached. They had already asked him his name and when he identified himself as Carlos Cregan, they told him to "drop what he had in his hands and place his hands behind his back." Kreger agreed that the wheeled bag was already sitting on the ground but stated that the handle was "still in his hand." On cross-examination, Kreger stated that defendant was already under arrest when he asked if Collins could take his bags. Kreger responded that it was departmental policy to carry out an "inventory search."

¶ 54 Officer Nyman testified that when defendant got off the train, "I saw that he was carrying two bags and approached him and asked him if he was Carlos Cregan, and he said that he was, and I explained he needed to drop his bags; we had a warrant for his arrest." According to Nyman, the arrest and Cregan's making "contact with the female" were almost simultaneous. Nyman reiterated that defendant had his hand on the handle of the wheeled bag when Nyman told him that he was under arrest. Defendant then dropped both bags and was placed in handcuffs.

¶ 55 Defendant testified that he approached his friend, Ms. Collins, put his bags down, and hugged her. She whispered to him that she hoped that "they"—meaning the approaching officers—were not there for him. (Collins did not testify at the suppression hearing.) After he was handcuffed, he asked if Collins could take his bags. The officers refused and "wheeled it to the side of the station and started taking out all my stuff there."

¶ 56 Defense counsel had argued that the civil nature of the warrant for unpaid child support weighed against finding the actions of the police officers permissible. In effect, he argued that despite the officer's knowledge that defendant was affiliated with a street gang, they had no reasonable suspicion that he was carrying a weapon or contraband in his luggage. Of course, a search of the person incident to his arrest need not be justified by reasonable suspicion.

---

[3]The Seventh Circuit has produced one case that would counsel a contrary result, *United States v. Berry*, 560 F.2d 861, 864 (7th Cir. 1977) (*Berry I*), but that decision was vacated by *United States v. Berry*, 571 F.2d 2 (7th Cir. 1978) (*Berry II*), on the basis that *Chadwick* was not the law at the time the search in *Berry I* was carried out. Accordingly, the fruits of that search were not excluded.

To the extent that any vitality might have remained in the logic of *Berry I* after its judgment was vacated, the Seventh Circuit has explicitly denied any reliance on its analysis. "Moreover, contrary to the defendant's conclusion, this Circuit has not previously held that *Chadwick* changed the law concerning the applicability of the doctrine of searches incident to arrest to personal effects, such as attache cases. The defendant cites *United States v. Berry* as support for this conclusion, but this Court merely decided in *Berry* that *Chadwick* did not apply retroactively." *Garcia*, 605 F.2d at 357.

*Robinson*, 414 U.S. at 235. The trial court noted the civil nature of the offense underlying the warrant, but also remarked on "the role of these officers in terms of their normal investigative responsibilities, and how that connects up with the service of a civil warrant."

¶ 57 The court observed that the "fact that the Defendant was a documented gang member obviously played a role *** in their concern about what might be within the immediate control of the Defendant."

> "It is true that the cases focus on the Defendant's control or potential control based upon proximity to implements of weaponry in that circumstance. *** [T]o the Court's mind there's very little distinction to be had between the Defendant or someone who is a friend or ally of the Defendant being given control of possibly a dangerous weapon, in a circumstance where the officers have a right to be concerned for their safety because of the possible existence of a weapon."

The court expressed concern about the "idea that a suspect can hand an implement of weaponry to someone else, not necessarily reducing the, the possible danger, but at the same time insulate the property from being searched."

¶ 58 Despite the civil nature of the warrant, the court concluded:

> "I don't think this means that the property wasn't within his immediate control at the time of his arrest. Obviously, he was attempting to exert control over the property by giving it to someone else. And in that circumstance, it was appropriate that an inventory search be conducted incident to the Defendant's arrest."

¶ 59 We must give deference to the trial court's findings of fact unless against the manifest weight of the evidence. *People v. Bridgewater*, 235 Ill. 2d 85, 92 (2009). Based on the trial court's remarks, it is clear that the officers' account was deemed more credible and that the court believed defendant was in full possession of the bags when he was placed under arrest.[4] The trial court's finding that, based on their knowledge at the time, the arresting officers had a "legitimate concern" about the possibility of a weapon in the bags, and that the wheeled bag was within defendant's "immediate control at the time of his arrest," is not against the manifest weight of the evidence. The trial court, however, did not make a clear distinction between a search of the area within defendant's immediate control and a search of the person incident to his arrest.

¶ 60 We conclude that *Hoskins* does apply to the search of defendant's bag. The bag was in the actual physical possession of defendant at the time of his arrest, just as the defendant's purse was in her actual possession in *Hoskins*. Because the bag was in the actual physical possession of defendant when he was placed under arrest, it was a personal effect immediately associated with his person. Accordingly, officers were allowed to search the bags pursuant to a search of the person incident to arrest.

---

[4]We note, as well, that even if the trial court found the defendant's version of events to be more credible, the defendant would have set the bags down as officers approached to arrest him. The resulting finding of possession would be the same. Defendant could not avoid a finding of possession by dropping the bags quickly, as such a distinction would be untenable and inconsistent with *Hoskins*.

The defendant also contends that even if the search of the luggage was lawful, the extension of that search to the hair gel container inside the luggage was unreasonable.

In *Robinson*, the Supreme Court held "in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Robinson*, 414 U.S. at 235. The full search of the person included inside the pack of cigarettes found in the defendant's coat pocket. *Robinson*, 414 U.S. at 236. Likewise, in *Hoskins*, police officers did not violate the fourth amendment when they opened an envelope found inside the defendant's purse and discovered a hypodermic syringe and cocaine. *Hoskins*, 101 Ill. 2d at 212. Under *Robinson* and *Hoskins*, a full search of an arrestee's person includes inspection of items and containers immediately associated with the person.

We have held the search of defendant's luggage was permissible incident to his arrest under *Robinson* and *Hoskins*. As part of that search, the officers were entitled to inspect the hair gel container found inside the luggage. We, therefore, conclude that the search of the hair gel container was lawful incident to defendant's arrest. The trial court did not err in denying defendant's motion to suppress the evidence seized in that search.

Because we conclude the trial court properly upheld the search as a search of the person incident to arrest, we need not consider the State's arguments in favor of a search of the area incident to arrest, whether the search might fall under the exception for inventory searches, or defendant's argument that the State has forfeited the inventory search argument. As for defendant's related argument that the officers should have given the bags to Ms. Collins, the officers acted reasonably in declining to turn over the unknown contents of defendant's bags to his associate.

### III. CONCLUSION

For the foregoing reasons, we affirm the appellate court's judgment affirming the denial of defendant's motion to suppress.

Affirmed.

JUSTICE BURKE, dissenting:

The defendant, Carlos Cregan, exited a passenger train in Normal, Illinois, pulling a wheeled luggage bag behind him. Three police officers, acting pursuant to a civil arrest warrant issued because of a failure to pay child support, approached defendant and informed him that he was under arrest. Defendant offered no resistance and was handcuffed behind his back. One of the officers then removed defendant's luggage bag to the side of the train station, searched the bag, and found a container of hair gel. Inside that container, the officer discovered a packet of powdered cocaine.

Defendant was charged with unlawful possession of less than 15 grams of a controlled substance. 720 ILCS 570/402(c) (West 2008). He filed a motion to suppress the cocaine, which

was denied. He was subsequently convicted of the charged offense and the conviction was affirmed on appeal (2011 IL App (4th) 100477).

¶ 72 In this court, the State maintains that the warrantless search of defendant's luggage bag was lawful under the fourth amendment as a search incident to arrest. The State concedes, as it must, that there was no possibility defendant could have retrieved and destroyed any evidence from his bag that was related to the purpose of the arrest, since the arrest was based on a failure to pay child support. The State maintains, however, that "because the luggage was within defendant's area of reach" at the time it was searched, it was permissible to search the luggage bag to ensure that defendant could not obtain a weapon and threaten the safety of the arresting officers.

¶ 73 The majority does not address this argument. Instead, the majority holds *sua sponte* that any "object" which is in the "actual physical possession" of an arrestee at the time of an arrest is part of the arrestee's "person" (*supra* ¶¶ 50-51), and may be searched under the rule announced in *United States v. Robinson*, 414 U.S. 218 (1973), even if there was no likelihood of any danger to the arresting officers. This possession rule, the majority explains, does not require that the arrestee literally be in physical contact with the object at the time of arrest "as such a distinction would be untenable." *Supra* ¶ 59 n.4. Rather, an object is in an arrestee's possession and, therefore, part of his person when it is in "close proximity to the individual at the time of his arrest." *Supra* ¶ 50. Applying this rule, the majority concludes that defendant's luggage bag was part of his person and was lawfully searched incident to his arrest.

¶ 74 The majority's possession rule has been expressly rejected by the United States Supreme Court. It is also at odds with our own case law and finds no support elsewhere. For these reasons, as well as others set forth below, I must respectfully dissent.

¶ 75 The Majority's Possession Rule Has Been Rejected by the
United States Supreme Court

¶ 76 The fourth amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall be violated ***." U.S. Const., amend. IV. A search occurs within the meaning of the fourth amendment when the government " 'obtains information by physically intruding' on persons, houses, papers, or effects" (*Florida v. Jardines*, 569 U.S. ___, ___, 133 S. Ct. 1409, 1414 (2013) (quoting *United States v. Jones*, 565 U.S. ___, ___ n.3, 132 S. Ct. 945, 950 n.3 (2012))), or when the government invades a constitutionally protected " 'reasonable expectation of privacy' " (*California v. Ciraolo*, 476 U.S. 207, 211 (1986) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring))). A search conducted without a warrant issued by a neutral magistrate who has found probable cause is *per se* unreasonable under the fourth amendment, unless it falls within one of a few well-defined exceptions to the warrant requirement. *People v. Pitman*, 211 Ill. 2d 502, 513 (2004).

¶ 77 The Supreme Court has held both that a traveler's personal luggage is an "effect" protected by the fourth amendment (*United States v. Place*, 462 U.S. 696, 707 (1983)), and that a traveler possesses a privacy interest in the contents of his or her luggage bag (*Bond v. United States*, 529 U.S. 334, 337 (2000)). That being the case, the search of defendant's bag here, undertaken

- 15 -

without a search warrant or finding of probable cause, was presumptively unlawful. *Arkansas v. Sanders*, 442 U.S. 753, 762 (1979) ("A lawful search of luggage generally may be performed only pursuant to a warrant."), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991).

¶ 78        The State maintains, however, that the search of defendant's luggage bag was permissible because it fell within the search-incident-to-arrest exception to the warrant requirement. The modern iteration of this exception begins with *Chimel v. California*, 395 U.S. 752 (1969). In that case, the defendant was arrested at his home on a charge of having burglarized a coin shop. After informing him that he was under arrest, the arresting officers searched the defendant's entire three-bedroom house, including the attic, the garage, and a small workshop. Several items were seized and subsequently entered into evidence at the defendant's trial.

¶ 79        The Supreme Court held that the search was not a lawful search incident to arrest. The Court explained that the search-incident-to-arrest exception is justified by two purposes: removing any weapons that could be used by the arrestee to resist arrest, effect escape, or endanger the arresting officer's safety, and preventing the concealment or destruction of evidence. Further, because the search incident to arrest is justified by these rationales, the permissible scope of the search is limited. The arresting officer may search only "the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id*. at 763. Under this rule, the Court concluded that the search of the defendant's home was unreasonable, since it went well beyond a search of his person or area from which he might have obtained a weapon or destructible evidence.

¶ 80        Importantly, the Court in *Chimel* rejected the view that a warrantless search incident to a lawful arrest may generally "extend to the area that is considered to be in the 'possession' " of the arrestee. *Id*. at 760. Such a proposition, the Court observed, could withstand "neither historical nor rational analysis." *Id*. As the Court stated, although a lawful arrest justifies some interference with the privacy of the arrestee, it does not follow that any arrest, by itself, "automatically" permits "further intrusions" into areas in the possession of an arrestee that are protected by the fourth amendment's warrant requirement. *Id*. at 766 n.12. Otherwise, the arrest could become a pretext, used by the government to rummage through a person's house and effects solely for general investigatory purposes.

¶ 81        Thus, the arrest in *Chimel* did not automatically allow the arresting officers to search the entirety of the defendant's house—an area explicitly protected by the fourth amendment—simply because the defendant was in possession of the house at the time of arrest. From the beginning, then, the Supreme Court has rejected the notion that the sole factor in determining the scope of a lawful search incident to arrest is whether an object is in the possession of the arrestee.

¶ 82        The majority here, however, contends that its possession rule is permitted under *United States v. Robinson*, 414 U.S. 218 (1973). In *Robinson*, the defendant was arrested for driving without an operator's permit. The arresting officer searched the defendant as a matter of course and found what appeared to be a crumpled-up package of cigarettes in the breast pocket of his coat. Inside the package was heroin.

¶ 83 Although there was no evidence to discover regarding the crime of driving without a permit, and the arresting officer testified that he did not believe he was in any danger, the Court upheld the search as a lawful search incident to arrest. In so holding, the Court emphasized that it was confronted only with the validity of a search of an arrestee's person, rather than a search of the area within his or her control. Acknowledging that the "area of control" had been subject to differing interpretations, the Court stated there was "no doubt" as to "the unqualified authority of the arresting authority to search the person of the arrestee" (*id*. at 225), at least when the arrestee is subject to a "custodial arrest." In that context, the Court explained, the danger to the arresting officer from "extended exposure" to a suspect while taking him into custody and transporting him to the police station justifies a full search of the person. *Id*. at 234-35. This was true, the Court stated, regardless of "what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." *Id*. at 235.

¶ 84 The Court in *Robinson* thus held that a lawful, custodial arrest of a person based on probable cause, itself a "reasonable intrusion under the Fourth Amendment," was sufficient, standing alone, to justify a full search of the arrestee's person. *Id*. Accordingly, because the heroin was found on the defendant's person following a lawful, custodial arrest, the Court upheld the search as a lawful search incident to arrest.

¶ 85 In an influential concurring opinion, Justice Powell explained the *Robinson* decision in terms of the defendant's reasonable expectation of privacy. Justice Powell observed that when an arrestee is subject to a lawful, custodial arrest, the arrestee's privacy interest in his or her person "is subordinated to a legitimate and overriding governmental concern." *Id*. at 237 (Powell, J., concurring). The search of the defendant's person in *Robinson* was reasonable, according to Justice Powell, because the privacy interest protected by the fourth amendment was "legitimately abated by the fact of arrest" (*id*. at 238), and thus, there was no need for the government to show any safety concerns or any possibility of destroying evidence.

¶ 86 The majority here reads the *Robinson* search-of-the-person rule as extending not only to a search of an arrestee's clothing, or containers found on the arrestee's person like a cigarette package, but to every object in an arrestee's possession at the time of arrest. The majority is not the first to read *Robinson* this way. In the aftermath of *Robinson*, some courts concluded that, unlike *Chimel*, which held that an arrest of a person in his house did not, in every case, automatically justify searching the entire house, *Robinson* should be read as holding that an arrest in public justifies not only a search of the arrestee's person, but also a search of all personal effects in the possession of the arrestee, even if those effects would otherwise be protected by the fourth amendment's warrant requirement. Just like the majority here, these courts treated any effects in the possession of the arrestee as merely an "extension of the person and thus subject to search under *United States v. Robinson* without any showing of justification based upon the facts of the individual case." 3 Wayne R. LaFave, Search and Seizure § 5.5(a), at 287-88 (5th ed. 2012) (collecting cases).

¶ 87 But the Supreme Court rejected this reading of *Robinson* in *United States v. Chadwick*, 433 U.S. 1 (1977). In *Chadwick*, railroad officials in San Diego alerted federal law enforcement officers that defendants Gregory Machado and Bridget Leary[5] had loaded a footlocker onto a

---

[5]The majority erroneously states that the defendants in *Chadwick* were all men. *Supra* ¶ 37.

passenger train bound for Boston that they suspected contained narcotics. When the train arrived in Boston, federal officers observed Machado and Leary claim the footlocker from a baggage cart, place it on the floor and sit down on it. A police dog with the officers signalled the presence of a controlled substance inside the footlocker.

¶ 88    Defendant Joseph Chadwick then joined Machado and Leary and, together with an attendant, moved the footlocker outside to Chadwick's car. Machado, Chadwick and the attendant together lifted the footlocker into the trunk of the car, while Leary waited in the front seat. At that point, with the trunk of the car still open and before the car had been started, the federal officers arrested all three defendants. The footlocker was then taken to a federal building in Boston. An hour and a half after the arrests, it was opened without a warrant and discovered to contain large amounts of marijuana.

¶ 89    In the Supreme Court, the government argued, in part, that the search of the footlocker was a valid search incident to arrest. The government conceded that the defendants could not have gained access to the interior of the locked footlocker when they were arrested. However, relying on *Robinson*, the government maintained that any privacy interest an arrestee has in property in his possession at the time of a custodial arrest is " 'legitimately abated' " by the fact of the arrest itself. Brief for the Petitioner, *United States v. Chadwick*, 433 U.S. 1 (1977) (No. 75-1721), 1977 WL 189820, at *56-57 (quoting *Robinson*, 414 U.S. at 238 (Powell, J., concurring)). This proposition, coupled with the fact that the police officers had probable cause to believe the footlocker contained narcotics, justified the search. Further, according to the government, it did not matter that the search occurred an hour and a half after the arrests because the Supreme Court had upheld the probable cause search of a defendant's clothing at a police station some ten hours after his arrest in *United States v. Edwards*, 415 U.S. 800 (1974).

¶ 90    The defendants, in contrast, maintained that "the intrusion of an arrest does not automatically destroy the individual's Fourth Amendment right to privacy in all of the 'property in his possession,' " and that nothing in *Robinson* or *Edwards* suggested that it would be " 'reasonable' under the Fourth Amendment to search through all belongings in any way associated with or in the 'possession' of the arrestee, even though not upon his person or within his 'immediate possession' or within his 'immediate control' at the time of arrest." (Emphasis omitted.) Brief for the Respondents, *United States v. Chadwick*, 433 U.S. 1 (1977) (No. 75-1721), 1977 WL 189821, at *74-75.

¶ 91    The government's argument was accepted by two of the Justices on the Court. Justice Blackmun, in a dissenting opinion joined by Justice Rehnquist, cited to *Robinson* for the assertion that a "custodial arrest is such a serious deprivation that various lesser invasions of privacy may be fairly regarded as incidental." *Chadwick*, 433 U.S. at 20 (Blackmun, J., dissenting, joined by Rehnquist, J.). Justice Blackmun acknowledged that an "arrested person, of course, has an additional privacy interest in the objects in his possession at the time of arrest," but maintained that the "formality of obtaining a warrant in this situation" would not have much practical effect in protecting fourth amendment values. *Id.* Justice Blackmun therefore would have held that the government could "seize and search any movable property in the possession of a person properly arrested in a public place." *Id.* at 19. In short, the dissent in *Chadwick* adopted exactly the same position taken by the majority here.

¶ 92    However, the majority of the Supreme Court in *Chadwick* rejected this position, and held that the warrantless search of the footlocker was not a valid search incident to arrest. The Court stated that "warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the 'search is remote in time or place from the arrest,' [citation], or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." *Id.* at 15 (majority opinion). Applying this rule, the Court held that, because "the search was conducted more than an hour after federal agents had gained exclusive control of the footlocker and long after [the defendants] were securely in custody," it could not "be viewed as incidental to the arrest or as justified by any other exigency." *Id.*

¶ 93    The Court then directly addressed the government's argument regarding *Robinson* and *Edwards*. Those cases were distinguishable, the Court stated, since they involved searches "of the person" rather than searches "of possessions within an arrestee's immediate control." *Id.* at 16 n.10. Searches of a person, according to the Court, are "justified by" the "reduced expectations of privacy caused by the arrest" whereas searches of possessions within an arrestee's immediate control are not. *Id.* Accordingly, the defendants' "privacy interest in the contents of the footlocker was not eliminated simply because they were under arrest." *Id.*; see also *id.* at 13 n.8 ("Though surely a substantial infringement of respondents' use and possession, the seizure [of the footlocker] did not diminish respondents' legitimate expectation that the footlocker's contents would remain private."). In other words, while a custodial arrest, and an officer's "extended exposure" to an arrestee while taking him into custody (*Robinson*, 414 U.S. at 234-35), legitimately abates any reasonable expectation of privacy in the arrestee's person, an arrest does not, by itself, automatically abate an arrestee's privacy interest in any and all of his possessions. To hold otherwise would run the risk of encouraging pretextual arrests, used by the government to search through a person's effects for general investigatory purposes.

¶ 94    In a later opinion, Chief Justice Burger, the author of *Chadwick*, emphasized the point: "The essence of our holding in *Chadwick* is that there is a legitimate expectation of privacy in the contents of a trunk or suitcase accompanying or being carried by a person; that expectation of privacy is not diminished simply because the owner's arrest occurs in a public place." *Arkansas v. Sanders*, 442 U.S. 753, 766-67 (1979) (Burger, C.J., concurring in the judgment, joined by Stevens, J.).

¶ 95    *Chadwick* thus explicitly holds that a custodial arrest does not, by itself, automatically abate the arrestee's reasonable expectation of privacy in all objects in his or her possession at the time of arrest; and *Chadwick* explicitly holds that a custodial arrest does not, by itself, automatically justify searching all objects in the arrestee's possession. The majority here, in contrast, holds that a custodial arrest does, by itself, automatically justify searching all objects in the arrestee's possession. The majority's holding is directly at odds with *Chadwick*.

¶ 96    The majority does not acknowledge or address *Chadwick*'s treatment of *Robinson* and *Edwards*. Instead, the majority states that *Chadwick* is irrelevant to its decision because "the permissible scope of a search of a person incident to his arrest *** was not raised." *Supra* ¶ 40.

- 19 -

This simply is not true. The government's search-incident-to-arrest argument in *Chadwick* was premised largely, if not entirely, on the idea that the *Robinson* search-of-the-person rule extended to the footlocker in the defendants' possession because of the reduced expectation of privacy that accompanies a custodial arrest. The Court expressly rejected this argument, thereby holding that a custodial arrest does not automatically justify searching every object in the arrestee's possession—the exact opposite of the position taken by the majority here. Indeed, it is logically impossible to conclude that *Chadwick* has no relevance to this case when the very rule adopted by the majority here was proposed in Justice Blackmun's dissent, and that rule was rejected by the Court.

¶ 97    And *Chadwick* is not the only problem confronting the majority. Consider the following scenario. A police officer in a squad car runs a computer check of a license plate on a nearby vehicle. The check reveals that the registered owner of the vehicle has an outstanding arrest warrant for failing to appear in domestic court on a matter of child support. The officer pulls over the vehicle, confirms that the driver is the vehicle's owner and informs him that he is under arrest. The officer removes the driver from the vehicle, handcuffs him and secures him in the back of the squad car. The officer then searches the vehicle and discovers contraband.

¶ 98    Applying the majority's reasoning, the search of the vehicle would be a valid search incident to arrest. The fact that the "object" searched was a vehicle would be irrelevant because, under the majority's possession rule, the "size, shape, materials, function, or some other attribute" of the object (*supra* ¶ 49) plays no role in determining whether the object is part of, or immediately associated with, the arrestee's person. Instead, the only relevant factor would be whether the arrestee was in possession of the vehicle at the time of arrest. On that question, there would be no dispute, since the driver was physically occupying the vehicle at the time of arrest. Thus, applying the majority's reasoning, the vehicle would be part of the arrestee's person and, even though the driver was handcuffed in the back of the squad car at the time of the search, the search would be lawful incident to the arrest.

¶ 99    Of course the Supreme Court held just the opposite in *Arizona v. Gant*, 556 U.S. 332 (2009). In that case, the Court held that police officers may not, incident to a lawful arrest, conduct a warrantless search of an arrestee's vehicle after he has been removed from the vehicle, handcuffed, and placed in a squad car. Instead, an automobile search incident to a recent occupant's arrest is constitutional only if the arrestee is within reaching distance of the vehicle during the search, or if the police have reason to believe that the vehicle contains "evidence relevant to the crime of arrest." *Davis v. United States*, 564 U.S. ___, ___, 131 S. Ct. 2419, 2425 (2011).

¶ 100    Thus, the majority's possession rule was not only squarely rejected in *Chadwick*, it also has the effect of negating the Supreme Court's decision in *Gant*. Obviously, we have no authority to do this.


¶ 101                    The Majority Overrules *People v. Hoskins*

¶ 102    The majority opinion is not only at odds with precedent from the United States Supreme Court, it is also at odds with our own decision in *People v. Hoskins*, 101 Ill. 2d 209 (1984). In *Hoskins*, the defendant approached an unmarked police car and agreed to perform an act of "deviate sexual conduct" with two police officers. When told that she was under arrest for

prostitution, the defendant ran. As she fled, her purse either fell or was thrown to the ground. The defendant was subdued approximately 10 to 20 feet from the police car and was handcuffed behind her back. Her purse was then searched and cocaine was discovered inside. *Id*. at 212.

¶ 103     This court upheld the search under *Robinson*. In so holding, the court distinguished *Chadwick*, stating:

> "The footlocker in *Chadwick* understandably was not considered to be immediately associated with the arrestee's person. A purse is obviously different in size and character and has been considered to be different. The court in *United States v. Berry* (7th Cir. 1977), 560 F.2d 861, 864, stated that a purse 'might be characterized as "immediately associated with the person of the arrestee" because it is carried with the person at all times.' (See also *People v. Helm* (1981), 89 Ill. 2d 34, 39-44 (Ward, Underwood, and Moran, JJ., dissenting), and cases cited therein; *United States v. Graham* (7th Cir. 1981), 638 F.2d 1111, *cert. denied* (1981), 450 U.S. 1034, 68 L. Ed. 2d 231, 101 S. Ct. 1748; *United States v. Venizelos* (S.D.N.Y. 1980), 495 F. Supp. 1277; *Stewart v. State* (Tex. Crim. App. 1981), 611 S.W.2d 434.) It seems clear in any sensible construction that a purse is 'immediately associated with the person of the arrestee.' " *Id*. at 215.

¶ 104     Importantly, *Hoskins* did not uphold the search of the purse because every object in the possession of an arrestee is part of the arrestee's person, or because a custodial arrest automatically justifies the search of every object in an arrestee's possession. Rather, the court upheld the search based on its determination that searching a purse is analytically similar to searching an arrestee's clothing or pockets, items to which an officer has "extended exposure" while taking the arrestee into custody (*Robinson*, 414 U.S. at 234-35). Indeed, every authority cited by *Hoskins* in support of its holding treated the question of searching a purse this way, with no case holding that possession was the defining factor in determining whether the purse could lawfully be searched incident to arrest. Representative of the cases relied upon by *Hoskins* is *United States v. Graham*, 638 F.2d 1111 (7th Cir. 1981), in which the Seventh Circuit stated:

> "The human anatomy does not naturally contain external pockets, pouches, or other places in which personal objects can be conveniently carried. To remedy this anatomical deficiency clothing contains pockets. In addition, many individuals carry purses or shoulder bags to hold objects they wish to have with them. Containers such as these, while appended to the body, are so closely associated with the person that they are identified with and included within the concept of one's person. To hold differently would be to narrow the scope of a search of one's person to a point at which it would have little meaning." *Id.* at 1114.

See also, *e.g.*, *Dawson v. State*, 395 A.2d 160, 167 (Md. Ct. Spec. App. 1978) (searching a purse is "analytically akin to a search of items found in an arrestee's clothing or pockets").

¶ 105     The majority here, however, holds that factors which *Hoskins* found legally relevant in determining the scope of a search incident to arrest are now legally irrelevant. The majority has, in short, overruled the analytical approach taken in *Hoskins* and adopted an entirely new

one. At no point does the majority acknowledge this fact or attempt to justify its decision to adopt a new possession rule under principles of *stare decisis*.

¶ 106     *Hoskins*, it should be noted, was not alone in its understanding of what constitutes a search of a person under *Robinson*. Professor LaFave, in his treatise on search and seizure law, summarizes the law on this issue and states the governing rule: "A search is deemed to be 'of a person' if it involves an exploration into an individual's clothing, including a further search within small containers, such as wallets, cigarette boxes and the like, which are found in or about such clothing. By contrast, *** [searches are not of the person when] directed at containers and other personal effects which, given the circumstances, do not have this intimate a connection with a person. This includes suitcases and similar containers in the possession of the suspect, and also such containers and other effects which are not in the possession of the suspect at the time the police either seize or search them." 3 Wayne R. LaFave, Search and Seizure § 5.5, at 283 (5th ed. 2012); see also, *e.g.*, *id*. § 5.3(a), at 190-91 (under *Robinson*, "the police may search through the arrestee's pockets, wallet, [and] other containers on the person"); *id*. § 5.2(c), at 143 n.63. ("Items on the person such as wallets may also be subjected to warrantless search incident to arrest ***.").

¶ 107     The majority, however, dismisses Professor LaFave's statement of the rule regarding searches of the person because it is "descriptive, not prescriptive." *Supra* ¶ 47. This is a puzzling rationale. The primary purpose of a legal treatise is to describe the governing rules in a specific area of law. Unless that description is inaccurate—and the majority does not assert that Professor LaFave has incorrectly described Supreme Court precedent—there is no reason to disregard it.

¶ 108                    No Court Has Adopted the Majority's Possession Rule

¶ 109     The majority cites only two cases in support of its holding that any object in the possession of an arrestee is part of his person: an unpublished opinion, *United States v. Matthews*, 532 F. App'x 211 (3d Cir. 2013), and *United States v. Gordon*, 895 F. Supp. 2d 1011 (D. Haw. 2012). *Supra* ¶ 50. Neither of these cases supports the majority.

¶ 110     In *Matthews*, the defendant was arrested, and a backpack he was carrying was seized. The police officers placed the defendant in the backseat of a police car and then searched the backpack before placing it in the trunk. Inside, police discovered a handgun, gloves, and duct tape. The district court denied the defendant's motion to suppress the contents of the backpack and the circuit court affirmed.

¶ 111     Importantly, in upholding the warrantless search, the circuit court did *not* conclude that the backpack was part of the defendant's person under *Robinson*. To the contrary, the circuit court expressly held that "the search could not be justified under the search incident to arrest exception." *Matthews*, 532 F. App'x at 218.

¶ 112     The court upheld the search on the basis of a newly created exception to the warrant requirement, one the court named a "Search Pursuant to the Transportation of an Arrestee." *Id*. at 221. This exception, the court explained, allows police officers to search any seized property at the time of arrest where the property itself "must invariably be transported along with the arrestee to the police station." *Id*. at 225. In adopting this new exception, the court was careful to limit its holding solely to the fact pattern before it. In particular, the court did *not*

hold that its exception would apply in those situations where an arrestee is accompanied by another person who is not arrested and who is free to take responsibility for any property seized by the police. *Id*. at 227 n.1 (Ambro, J., concurring in part and concurring in the judgment).

¶ 113    The majority has thus miscited *Matthews* in two respects. First, *Matthews* does not hold that any possession belonging to an arrestee may be searched incident to arrest. In fact, the court expressly held that the search of the backpack could not be justified under the search-incident-to-arrest exception. *Id*. at 218. Second, in this case, defendant was accompanied by another person, Lindsey Collins, who was not arrested or suspected of any wrongdoing and who offered to take responsibility for the luggage bag. *Matthews* does not address this situation.

¶ 114    The majority similarly misconstrues *Gordon*. In *Gordon*, two items belonging to the defendant were searched, a duffle bag and a wallet. The majority cites *Gordon* as holding that the duffle bag was part of the defendant's person and could therefore be searched under *Robinson*. *Supra* ¶ 50. The court did not so hold. What the court held was that the wallet, which was taken from the defendant's person when he was arrested, could be searched under *Robinson*. *Gordon*, 895 F. Supp. 2d at 1022-23. The search of the duffel bag was analyzed as a search of an area under the arrestee's control, and the search was upheld because "the bag was within [the defendant's] reaching distance at the time" it was searched. *Id*. at 1015, 1019-22.

¶ 115    In short, neither of the only two opinions cited by the majority in support of its possession rule holds that every object in the possession of an arrestee is part of the arrestee's person. In fact, both opinions support the opposite conclusion.

¶ 116                          The Majority's Possession Rule Is Vague

¶ 117    In certain respects, the majority opinion is quite clear. The "nature" and "character" of an object (*supra* ¶ 43) are legally irrelevant in determining whether an object is part of an arrestee's person. Further, the arrestee need not be literally in physical contact with an object at the time of arrest for the object to be part of the arrestee's person (*supra* ¶ 59 n.4), and any "inquiry into degree of attachment" is "reject[ed]" (*supra* ¶ 49). In addition, "the length of time the defendant has spent with a possession" plays no role in determining whether the object is part of his person. *Supra* ¶ 48.

¶ 118    In other respects, however, the majority opinion is unclear. The majority states that objects may be searched incident to arrest when they are "in close proximity to the individual at the time of his arrest." *Supra* ¶ 50. But "close proximity" is an inherently indeterminate phrase and the majority never explains what it means or how a police officer in the field is to know when an object is in close proximity to an arrestee. It may be that what the majority means by "close proximity" is "reaching distance." If so, then the majority has completely eliminated the distinction between searches of an arrestee's "person" and searches within the arrestee's "area of control" recognized by the Supreme Court in cases such as *Robinson*. That cannot be correct.

¶ 119    The majority does reference one example which might provide clarity regarding its possession rule, when it states that the defendants in *Chadwick* were not in possession of the

- 23 -

footlocker when they were arrested. *Supra* ¶ 51. Recall that in *Chadwick*, two of the defendants picked up a footlocker, placed it in the trunk of a car, and were standing next to the open trunk when they were arrested. It would appear then, that the majority's definition of possession does not include those situations where the arrestee releases an object just before being arrested. But, confusingly, the majority also holds that an arrestee cannot "avoid a finding of possession" by releasing an object just before he is arrested (*supra* ¶ 59 n.4)—exactly what happened in *Chadwick*. The majority's reference to *Chadwick* provides no clarity.

¶ 120    Other parts of the majority opinion only further the confusion. For example, the majority emphasizes that the size and physical characteristics of an object are irrelevant in determining whether an object is part of an arrestee's person, but the majority also states that, because of "the size, weight, and location" of the footlocker in *Chadwick* it would have been fruitless to argue that it was part of the defendants' persons. *Supra* ¶ 40. Elsewhere, the majority states in passing that the question presented in this case is whether an "item of moveable personal property" should be analyzed as a search of the person or a search of the area within his control. *Supra* ¶ 36. Assuming that the majority means for the word "movable" to have legal significance, how is a police officer or judge to determine if an object is "movable," and therefore within the possession rule, if its size, shape, and other physical attributes are all legally irrelevant?

¶ 121    The vagueness of the majority's opinion undoubtedly stems, in part, from its decision to create a new rule defining the person of an arrestee based on the idea of "possessing" objects. As the Supreme Court has observed, "there is no word more ambiguous in its meaning than possession." *National Safe Deposit Co. v. Stead*, 232 U.S. 58, 67 (1914). But the majority's difficulties also stem from the fact that the State has not argued for the adoption of the majority's new possession rule. The State's primary contention in this court is that the luggage bag was within defendant's "area of reach" at the time it was searched, and therefore it was reasonable for the police officers to search the luggage bag to ensure that defendant could not retrieve a weapon and threaten their safety. Nowhere in its brief does the State suggest or request that this court adopt the possession rule announced by the majority.

¶ 122    Of course, this fact in itself is not fatal. Courts of review in Illinois possess the discretionary authority to enter any judgment and make any order that the case may require. Ill. S. Ct. R. 366 (eff. Feb. 1, 1994). But when a court goes beyond the arguments raised in the parties' briefs and starts creating law on its own, it loses the clarity that comes with subjecting a proposed rule to adversarial testing. That clearly has occurred here. The majority has adopted a rule which is vague and unworkable.

¶ 123    To summarize my concerns, in adopting its rule that every item in the possession of an arrestee is part of his person, the majority squarely contradicts the United States Supreme Court's decision in *Chadwick*; negates the Court's decision in *Gant*; overrules our own decision in *Hoskins* with no mention of *stare decisis*; dismisses one of the leading fourth amendment scholar's description of fourth amendment law (without ever finding that description inaccurate); and adopts a vague, unworkable rule that finds no support in any case law, including the cases that the majority cites in support. And all this is done by the majority

*sua sponte*, with the State never having asked this court to adopt a possession rule and with defendant having never been provided with notice or an opportunity to respond.

¶ 124    The majority opinion goes too far for me. In this case, where the State is not advocating for the adoption of a new rule, I would simply adhere to settled precedent. The luggage bag being wheeled along the ground was not a container which was on defendant's person, or in or about defendant's clothing, at the time of his arrest. The search of defendant's luggage bag therefore was not permissible as a search of the person under *Robinson*.

¶ 125                    The Luggage Bag Was Not in Defendant's Area of Control

¶ 126    Because the present case is not governed by the search-of-the-person rule of *Robinson*, it is necessary to consider whether the search of defendant's bag was lawful as a search of an area under the arrestee's control. I would hold that it was not.

¶ 127    As noted, the search-incident-to-arrest exception was recognized by the United States Supreme Court in *Chimel v. California*, 395 U.S. 752 (1969), where the Court held that the permissible scope of a search incident to arrest includes "the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 763. Some years later, in *New York v. Belton*, 453 U.S. 454 (1981), the Supreme Court applied the search-incident-to-arrest exception to vehicle searches. In that case, the police officers removed the occupants of a vehicle stopped for a traffic violation and conducted a warrantless search of the pocket of a jacket in the car. The Court upheld the search and adopted a bright-line rule, holding that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" and any containers therein. *Id.* at 460. Of importance here, *Belton* was widely read by courts as holding that, although a search had to be made within the vicinity of an arrest in order to fall within the search-incident-to-arrest exception, there was no need to show that the arrestee had a realistic chance of getting inside the container being searched in order to destroy evidence or access weapons. Moreover, this reasoning was widely applied outside the context of vehicle searches. See generally 3 Wayne R. LaFave, Search and Seizure § 5.5(a), at 293-94 (5th ed. 2012) (collecting cases).

¶ 128    The Supreme Court subsequently revisited and clarified *Belton* in *Arizona v. Gant*, 556 U.S. 332 (2009). In *Gant*, the Supreme Court held that *Belton* did not authorize police officers to conduct a warrantless search of an arrestee's car after he had been removed from the vehicle, handcuffed, and secured in a squad car. The Court noted that "[t]o read *Belton* as authorizing a vehicle search incident to every recent occupant's arrest would thus untether the rule from the justifications [*i.e.*, officer safety and preventing the destruction of evidence] underlying the *Chimel* exception." *Id.* at 343. Accordingly, the Court concluded that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment" with that determination made "at the time of the search." *Id.* at 351. Because that condition was not met in the case before it, the Supreme Court held that the search was not a lawful search incident to arrest.

¶ 129    Relying primarily on *Gant*, defendant maintains that the search in this case was unlawful because, under the facts of this case, the police officers could not reasonably have believed that

defendant could have gained access to the luggage bag at the time it was searched. However, because *Gant* involved an automobile search, the State contends, and the appellate court below agreed, that *Gant* applies only to vehicle searches.

¶ 130    The United States Supreme Court has not yet addressed whether its decision in *Gant* is limited solely to vehicle searches. In *Davis v. United States*, 564 U.S. ___, 131 S. Ct. 2419 (2011), the Court held that although a vehicle search was unlawful under *Gant*, the exclusionary rule would not apply because the police had conducted the search in reliance on judicial precedent that predated *Gant*. *Davis* involved the search of a vehicle and, thus, the Court had no occasion to consider in that case whether *Gant* applied outside the context of vehicle searches. Other courts have, however, considered this issue. In *United States v. Shakir*, 616 F.3d 315 (3d Cir. 2010), the United States Court of Appeals for the Third Circuit applied *Gant* and upheld the search of a bag at the feet of an arrestee after he had been handcuffed and arrested. As in the case at bar, the government argued that *Gant* was limited solely to vehicle searches and, thus, was irrelevant to determining the reasonableness of the search. The *Shakir* court rejected this contention, explaining:

> "We do not read *Gant* so narrowly. The *Gant* Court itself expressly stated its desire to keep the rule of *Belton* tethered to 'the justifications underlying the *Chimel* exception,' *id.*, and *Chimel* did not involve a car search. Moreover, as we noted above, many courts of appeals perceived *Belton* to establish a relaxed rule for searches incident to arrest in all contexts. [Citations.] Because *Gant* foreclosed such a relaxed reading of *Belton*, there is no plausible reason why it should be held to do so only with respect to automobile searches, rather than in any situation where the item searched is removed from the suspect's control between the time of the arrest and the time of the search. *** [We] read *Gant* as refocusing our attention on a suspect's ability (or inability) to access weapons or destroy evidence at the time a search incident to arrest is conducted." *Id.* at 318.

See also, *e.g.*, *United States v. Taylor*, 656 F. Supp. 2d 998, 1001-02 (E.D. Mo. 2009); 3 Wayne R. LaFave, Search and Seizure § 5.5(a), at 296 (5th ed. 2012) (stating that *Gant* should be applied outside the vehicle context). Like the court in *Shakir*, I believe that *Gant* is relevant here.

¶ 131    That being said, it must be determined whether defendant was "within reaching distance" of his luggage bag at the time it was being searched such that the police officers conducting the search could reasonably have believed that defendant could gain access to it. The appellate court stated that defendant "was within arm's reach" of his bag during the search (2011 IL App (4th) 100477, ¶ 26), and the State, in its brief to this court, similarly maintains that "the luggage was within defendant's area of reach." Based on this, the State contends that although defendant was handcuffed behind his back, and outnumbered by the police officers, he nevertheless presented a safety risk, because he could have approached the luggage bag, kicked it to Collins, or otherwise have possibly accessed its contents. The difficulty with the State's argument is that there is no evidence of record to support the assertion that defendant was within arm's reach of the luggage bag at the time it was searched. At the suppression hearing, neither Officer Kreger nor Officer Nyman was asked about the proximity of defendant to his bag at the time of the search. The only testimony on this point came from defendant:

"Q. And did you observe the officers examine your bags?

A. Yes, they wheeled it to the side of the station and started taking out all my stuff there.

Q. In your presence?

A. Huh, while I was there.

Q. While you were standing there?

A. Yes."

From this testimony it is unclear where the luggage bag was in relation to defendant. The "side of the station" could have been 5 feet from defendant or 50.

There must be some evidence that an arrestee is within reaching distance of luggage at the time it is searched in order to come within the reasonable accessibility rule set forth in *Gant*. See, *e.g.*, *State v. Robalewski*, 418 A.2d 817, 823 (R.I. 1980) ("some approximation of the distance between the arrestee and the object searched is fundamental to a determination of the question of whether an object lies within an arrestee's immediate control"). This is particularly true in cases such as this, where defendant was both handcuffed behind his back and outnumbered by police officers. Compare *Shakir*, 616 F.3d at 321 (finding a valid search incident to arrest where the defendant was handcuffed and outnumbered by police officers, but the bag being searched "was literally at his feet"), with *United States v. McCraney*, 674 F.3d 614, 619-20 (6th Cir. 2012) (the defendant, who was not handcuffed, was "two or three feet from the rear bumper" of the car being searched and thus, was not " 'within reaching distance' " of the passenger compartment).

It is impossible to determine whether the officers in this case could reasonably have believed that defendant was "within reaching distance" of his luggage bag at the time of the search. Accordingly, the State failed to meet its burden of establishing that the warrantless search of defendant was valid as a search incident to arrest. See *United States v. Jeffers*, 342 U.S. 48, 51 (1951); *Boykins v. State*, 717 S.E.2d 474 (Ga. 2011) (holding that the government failed to meet its burden of showing that a search fell within the search-incident-to-arrest exception when there was no evidence regarding the proximity of defendant to the area being searched).

The State also relies on *United States v. Garcia*, 605 F.2d 349 (7th Cir. 1979). But that case, in addition to predating *Gant* by 20 years, is distinguishable on its facts. In *Garcia*, the government established that the defendant, who was not handcuffed, was "within one foot" of the suitcases at the time they were searched. *Id*. at 352. Here, in contrast, the State simply failed to offer proof showing the location of the luggage bag in relation to defendant at the time of the search.

The State does not contend that any exception to the warrant requirement, other than the search-incident-to-arrest exception, is applicable in this case. The warrantless search of defendant's luggage was thus *per se* unreasonable and the circuit court erred in denying defendant's motion to suppress.

Lastly, the State contends that the exclusionary rule should not apply in this case because the "officers acted in good faith and in reliance on *Hoskins*." As noted, however, *Hoskins* is inapposite. The good-faith exception to the exclusionary rule is therefore inapplicable.

¶ 137                                                     Conclusion

¶ 138          In *Gant*, the Supreme Court "refocus[ed] our attention on a suspect's ability (or inability) to access weapons or destroy evidence at the time a search incident to arrest is conducted." *Shakir*, 616 F.3d at 318. Under this standard, it is clear that the circuit court erred in denying defendant's motion to suppress because the State failed to show that defendant's luggage bag was within his reaching distance at the time it was searched. Accordingly, defendant's conviction should be reversed. See, *e.g.*, *People v. Surles*, 2011 IL App (1st) 100068, ¶ 42 (and cases cited therein).

¶ 139          The majority, however, avoids this straightforward result. It affirms defendant's conviction only by *sua sponte* changing the search-of-the-person rule, broadening that rule so that any object within the close proximity of an arrestee is deemed part of his person. In this way, the majority eliminates the need to show any likelihood that defendant reasonably could have accessed the interior of his bag at the time it was searched. Because the Supreme Court has unequivocally rejected the majority's definition of a search of a person, and for the additional reasons stated above, I respectfully dissent.

¶ 140          JUSTICE FREEMAN joins in this dissent.