# Illinois Official Reports

## Appellate Court

*People v. Burnett*, 2015 IL App (1st) 133610

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMAAL BURNETT, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-3610 |
| Filed | December 18, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-08331; the Hon. Carol A. Kipperman, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Samuel M. Hayman, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, and Mary A. Laird, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Presiding Justice Reyes concurred in the judgment and opinion.<br>Justice McBride specially concurred, with opinion. |

¶ 1 Defendant Jamaal Burnett was found guilty, after a bench trial, of one count of violating an order of protection (720 ILCS 5/12-3.4(a) (West 2012)) obtained by his former girlfriend, Shanan Krefft. He was sentenced to three years with the Illinois Department of Corrections (IDOC).

¶ 2 On appeal, defendant raises only one claim: that his sixth amendment right to confront the witnesses against him (U.S. Const., amend. VI) was violated by the admission of a prior statement by his former girlfriend.

¶ 3 In the case at bar, the trial court admitted the former girlfriend's prior statement, pursuant to a statutory hearsay section which required the court to first make a determination that she was "unavailable" for cross-examination. 725 ILCS 5/115-10.2a(a) (West 2010). At trial, she testified to a lack of memory about the facts of the alleged offense. On appeal, defendant agrees with the trial court that the witness was unavailable for cross-examination and argues that it was her unavailability which violated his sixth amendment rights.

¶ 4 When this statutory exception was enacted by our legislature in 2003, it was designed to conform to then-existing sixth amendment rules. *In re Rolandis G.*, 232 Ill. 2d 13, 23-24 (2008) (hearsay exceptions adopted in 2003 were designed to comport with then-existing sixth amendment rules). However, in 2004, the United States Supreme Court rejected those prior rules and adopted a completely different confrontation clause analysis in *Crawford v. Washington*, 541 U.S. 36 (2004). *In re Rolandis G.*, 232 Ill. 2d at 24 (in 2004, the United States Supreme Court "overturned" prior rules and "devised a fundamentally new procedure for analyzing confrontation clause claims"). Defendant claims that this pre-*Crawford* statute, as applied to him, violates his sixth amendment rights. As we discuss below, a constitutional challenge to a statute may be raised at any time. *People v. Cleary*, 2013 IL App (3d) 110610, ¶ 35; *People v. Martin*, 408 Ill. App. 3d 891, 895 (2011); *People v. Emmett*, 264 Ill. App. 3d 296, 297 (1994).

¶ 5 There is no dispute on appeal that the former girlfriend's statement was testimonial, that it was made out of court, and that defendant lacked any prior opportunity to cross-examine her. *Crawford v. Washington*, 541 U.S. 36, 68 (2004) (a testimonial out-of-court statement is admissible under the sixth amendment only if the witness is available for cross-examination at trial or the defendant had a prior opportunity to cross). Thus, the statement was properly admitted only if the witness can be said to be both unavailable for purposes of this statutory hearsay exception, but available for purposes of the sixth amendment right to confrontation.

¶ 6 For the following reasons, we affirm.

BACKGROUND

I. Indictment

¶ 9 On May 1, 2012, defendant was indicted on seven counts: four counts of aggravated stalking and three counts of violating a protective order. The trial court later found defendant

not guilty of all four counts of aggravated stalking, as well as two of the counts of violating a protective order.

¶ 10 The only count of which defendant was convicted, count V, charged that defendant had violated a valid protective order and stated that he "harassed Shanan Krefft." Count V did not specify the acts that constituted the harassment or the time period or the place of the harassment.

¶ 11 The trial court found defendant not guilty of the other two counts of violating a protective order, namely, counts VI and VII, which had charged that defendant violated the protective order by stalking Krefft and by interfering with her "personal liberty." Thus, the trial court acquitted defendant of all counts related to stalking.

¶ 12                                  II. The First Trial

¶ 13 In May 2013, defendant was tried on charges, other than the charges described above, that he had violated the protective order obtained by Krefft. After hearing testimony from Krefft and other witnesses, the trial court found defendant not guilty, on the ground that Krefft was not a credible witness. The court ruled:

> "THE COURT: I will consider the evidence in this case and I have consider[ed] the complaining witness's testimony as she testified to the court considering her demeanor while she testified[. This court] does not find her a credible witness. Further, she testified that she did have a telephone conversation with the defendant from the jail *** which he made. She told him don't call me again and she said stop calling me.
>
> If you look at the Call Detail Report from Cook County, which the State introduced, there's no call which shows that any contact was made. Therefore, the Court finds that [the] testimony that she gave based upon the evidence that I have in front of me with regard to the detail call report[,] that [her] testimony is not credible.
>
> Considering further her testimony that she did not feel threatened or harassed, all I have left is the number of telephone calls that were made. In this case, the Court would find given her testimony that she did not feel harassed for what that was worth, given her demeanor on the stand, given her attitude as she testified, the Court would find the defendant not guilty in this case.
>
> However, he has another case."

¶ 14 The statements that the trial court referred to above, that Krefft did not feel threatened or harassed, were elicited on cross-examination. On redirect, Krefft had stated: "I told the State earlier I was done and I didn't want nothing else to do with this case." The other case referred to by the trial court above is the case on this appeal, which the court and counsel scheduled for a bench trial in June 2013, and a status conference on May 21, 2013. The trial court asked "[w]ill she come?" and the prosecutor replied that "[s]he has to come back" because she is the "victim."

¶ 15 On May 21, 2013, at a status conference, the assistant State's Attorney (ASA) asked the trial court to admonish Krefft, who was present in court, that she must appear in court on June 14, 2013, when the second trial was scheduled. The trial court stated: "You must appear in court at the date and time in question. If you fail to appear, a warrant will issue for your arrest." The witness replied "[y]es" after the ASA requested that the witness acknowledge that she had

been so instructed.

¶ 16                                    III. The Second Trial

¶ 17          On June 14, 2013, defendant signed a jury waiver in open court, and the parties proceeded to a bench trial on the charges involved in this appeal.

¶ 18          The State called three witnesses: (1) Shanan Krefft, defendant's former girlfriend and the complainant; (2) Officer Wyees Williams, the arresting officer; and (3) Detective Johnny Thorns, who investigated the case. The defense also called Marcos Ryes, a Cook County public defender who witnessed Krefft stating that defendant had not harassed her.

¶ 19                                     A. Shanan Krefft

¶ 20          Shanan Krefft testified that she had been in a relationship with defendant for five years; that she had four children; that defendant was the biological father of her two youngest sons; and that he also acted as a father to her two oldest sons.

¶ 21          During the initial part of Krefft's testimony, the ASA observed that Krefft appeared to be in distress, and Krefft explained that she had cervical cysts, that she was supposed to have surgery today, that the cysts were starting to burst and that "they hurt."

¶ 22          Krefft testified that, in March 2012, she had an order of protection against defendant. She identified People's exhibit No. 1 as "the original order of protection" which, she stated, was in effect until February 6, 2013. However, the document identified in the appellate record as People's exhibit No. 1 is an order of protection issued on October 31, 2013, which states that a prior protective order was entered on November 30, 2010, and that the prior order is extended to October 28, 2015.

¶ 23          Then the ASA stated that he was showing the witness People's exhibit No. 2. The witness testified that it was entered on February 9, 2011. However, the document identified in the appellate record as People's exhibit No. 2 is an order of protection entered November 30, 2010. Krefft testified that People's exhibit No. 2 prohibited defendant from stalking or harassing her and from any unlawful contact.

¶ 24          Krefft testified that, in March 2012, she was living in a hotel near O'Hare Airport, and defendant drove by the hotel in his cab five times during March 2012 and that he called her after each time.

¶ 25          The State then repeatedly attempted to ask Krefft about events that occurred on March 3, 2012. Krefft testified that she could not remember anything from that date. She stated: "I just assume forget and just let everything go from back then." The State then tried to refresh Krefft's recollection by showing her People's exhibit No. 3, a typed statement she made to the "police."[1] Krefft testified that her memory was not refreshed about what happened on March 3, 2012. She explained: "I'm reading it, and it–I mean, if that's what I stated on there, then I guess that's what happened, but I don't remember." Krefft recalled meeting with Detective Johnny Thorns at the Cook County sheriff's office with a female detective and telling Thorns that defendant drove by her building in March 2012.

---

[1]The statement was marked People's exhibit No. 3 and it is described in the next section of this opinion.

¶ 26    When the ASA asked Krefft specifically about March 3, 2012, she replied: "Honestly, if I'm not looking at that [statement,] I don't remember." Defense counsel then objected, stating:

"DEFENSE COUNSEL: Well, [Y]our Honor, we assert she's already had the opportunity to review the document that the State had presented to her, and she still continues to indicate she cannot recall. We assert the document could not be used any further because it does not refresh her recollection."

¶ 27    Krefft testified that, on March 9, 2012, defendant was arrested at the motel, on the sidewalk, after she went to the front office and called the police. On March 9, 2012, prior to defendant's arrest, Krefft had received more than one telephone call and text message from defendant; however, she could not remember an exact number of calls or messages. Between March 1 and March 9, 2012, Krefft observed defendant driving down Mannheim Road, where her hotel was located. When she observed him, she could have been at her hotel or at a nearby gas station. On March 8, 2012, she received a text message from defendant, and there was probably more than one, but she did not remember.

¶ 28    Krefft testified that, during March 2012, she received a text message from defendant in which he said that he saw her. After defendant was arrested, the sheriff took him away and he appeared in court. Defense counsel objected on the ground that the events after March 9, 2012, "had no bearing on this case." The trial court then instructed the prosecutor to "[t]ie it up." Krefft testified that on April 6, 2012, she came to "this building" and spoke with an ASA, and that she and the ASA went to the sheriff's department "across from the courthouse," where they met with Detective Johnny Thorns and a female detective named Detective Amegatcher. After meeting with the two detectives, Krefft met with a different ASA and she gave a statement regarding the case.

¶ 29    On cross-examination, Krefft testified that she had no independent recollection of events that occurred between March 2, 2012, and March 9, 2012.

¶ 30                    B. Krefft's Statement to the ASA

¶ 31    After Krefft's testimony, the State offered her prior statement into evidence. The parties reached the following stipulation:

"ASA: Well, [Y]our Honor, at this time, it is stipulated by and between the parties that People's Exhibit 3 is signed by Shanan Krefft, and that at this time we would seek leave to publish it.

THE COURT: Okay.

DEFENSE COUNSEL: We'll acknowledge that she signed the document. We'll stipulate that she signed the document."

¶ 32    Defense counsel objected to any part of the statement that did not concern the period of time in the charging instrument, which was from March 2 to March 9, 2012. However, the trial court ruled that "the statement comes in as a whole."

¶ 33    When the ASA read the statement into the record, the ASA omitted portions. We describe the entire statement below, since the trial court stated that the court would consider the statement as "a whole." However, we indicate the portions that the ASA did not read into the record at trial.

¶ 34    The appellate record contains a typed statement identified as People's exhibit No. 3, with the following heading:

"Statement of Shanan Krefft
Taken April 6, 2012 at 3:47 p.m.
At Cook County Sheriff's Police Station, Maywood, IL.
Present Are: Shanan Krefft
Assistant State's Attorney [Name]
Cook County Sheriff's Police Detective Johnny Thorns #953."

¶ 35    Each page of the 5½ page document is signed at the bottom in pen by Krefft, the ASA and the detective. The typed document contains no handwritten corrections. Attached to the document are two exhibits, which are also signed at the bottom by the same three people. Exhibit A is a photograph of defendant; and Exhibit B is a photograph of Krefft. The statement begins by stating that it is "a summary and not word for word."

¶ 36    The statement recites that Krefft was born in 1982 and has been employed at Gottlieb Memorial Hospital for three weeks doing secretarial work. Before the secretarial job, she drove for a cab company. She has four children, aged 10, 6, 3 and 2, who are currently living with her parents in Melrose Park, Illinois. Defendant is the father of her two youngest children.

¶ 37    Krefft met defendant in August 2007 through a mutual friend and they were in a relationship from then until November 28, 2010. During the relationship, defendant "hit her hundreds of times" and she became "fed up" and ended the relationship on November 28, 2010, when she pressed charges against him for domestic battery.

¶ 38    After defendant's arrest in November 2010, she obtained a protective order against him on November 30, 2010. Defendant was in custody on that domestic battery charge from November 28, 2010, until March 28, 2011. According to Krefft, that order is still in effect and does not expire until February 6, 2013.

¶ 39    After defendant was released in March 2011, he continued to contact her, "but the contact was not harassing or intimidating in nature," and "she did not have any problems with [defendant] until September 17, 2011."

¶ 40    The prosecutor then stated that he would not read the portion of the statement, which concerned September 17, 2011. The typewritten statement recites that, on September 17, 2011, she let him come to the hotel room in Addison, Illinois, where she was living, in order to take a shower while she was out. When she arrived back at the room, they started fighting and he struck her. Krefft called the police, and domestic battery charges were filed against him in Du Page County. Defendant was in custody for two weeks and released toward the end of September 2011. He called her for a ride from jail which she refused.

¶ 41    The prosecutor continued reading at trial with the fact that Krefft remained in contact with defendant after his September 2011 release. The contact was civil until the end of January 2012, when defendant became angry at her refusal to reunite. During February 2012, defendant called her repeatedly on her cell phone and made threatening comments, such as saying "he should have killed her a long time ago."

¶ 42    On March 2, 2012, Krefft was walking on the sidewalk on Mannheim Road near O'Hare Kitchenettes, where she was living at the time, and she observed defendant drive by in his cab and look at her when he drove by. Two hours later, he called her on her cell phone, and she told him to leave her alone. She hung up, and he tried to call back, but she did not answer. Then she received a text message from his cell phone number which said "1 day."

¶ 43     The next day, she was walking back to her hotel room from the gas station across the street, when she observed defendant drive by in his cab and she ran back to her room. Defendant called her "multiple times" that day from his cell phone number and she answered one of the calls. The statement does not recount the contents of this conversation.

¶ 44     On March 5, 2012, she was exiting a bus near her hotel on Mannheim Road at 7 a.m. when she observed defendant sitting in his cab at the gas station across the street from her hotel. However, she did not believe that he observed her. Krefft then went into a nearby restaurant and waited until she observed him depart in his cab before returning to her hotel room. Defendant "called her non-stop that day" and she answered "a couple of times." Although Krefft stated that she answered only "a couple of times," she stated that "she told [defendant] numerous times that day to stop calling her." Krefft stated that defendant was "cursing and threatening her," and that he again told her that "he should have killed her."

¶ 45     On March 6, 2012, Krefft was in her motel room when she received a text message at 5:20 a.m. from defendant's cell phone number stating "I c u." Krefft then pushed the couch against the hotel room door and did not leave her room that day.

¶ 46     On March 8, 2012, she exited her room to walk to the front office to pay her bill, when she observed defendant drive past her hotel in his cab. She received "numerous phone calls and text messages" from defendant that day. Although the statement notes that she asked him to stop calling, it does not indicate how many times she answered or replied.

¶ 47     On March 9, 2012, she began receiving text messages from defendant's cell phone at 6:30 a.m. which continued throughout the day. He also called her "repeatedly." At 8:15 p.m., she opened the door to her hotel room and observed defendant in his cab in the parking lot. When defendant observed her, he exited his cab and yelled at her that he "should have stomped [her] head in a long time ago" and that he had "people that will kill for me." Krefft ran to the front desk, and the person there called the police.

¶ 48     When the prosecutor read the statement aloud, he stated: "Shanan [Krefft] states that she speaks Greek and writes English." However, the typed statement has no reference to Greek. It states only that she speaks and writes English. Both the prosecutor and the typed statement indicate that Krefft was given the opportunity to make changes but that she did not wish to do so.

¶ 49     After the prosecutor finished reading the statement aloud to the court, defense counsel objected to its admission as a prior inconsistent statement. The prosecutor responded that it was admissible as a prior inconsistent statement pursuant to section 115-10.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10.1 (West 2012)). Defense counsel replied that this statutory section required that the statement be "inconsistent with his [or her] testimony at the hearing or trial" and he argued that the statement was not inconsistent since Krefft stated at trial only that she could not recall.

¶ 50     The prosecutor responded that "it is inconsistent. When she sits there and says, I can't remember these events, it's like saying I'm not going to testify." The trial court agreed.[2]

_____

[2]However, at the end of the State's case, when the State moved to admit the statement into evidence, the trial court admitted the statement pursuant to a different statutory hearsay exception, as we describe below (*infra* ¶¶ 60-62).

¶ 51                                    C. Officer Wyees Williams

¶ 52        Wyees Williams testified that he was a police officer with the Cook County sheriff's office. On March 9, 2012, he was on patrol in uniform and in a marked police vehicle when he was dispatched at 8:20 p.m., to a motel on Mannheim Road, where he met Krefft in the front office. Krefft was distraught, and had scratches on her neck and bruising on her arm. Krefft showed Williams an order of protection that she had against defendant, and he observed that the order was still in effect. When the officer, who was in uniform, knocked on the door of a motel room, defendant answered it and then identified himself in response to the officer's question. Defendant then stated: "I haven't done anything, I'm sitting here watching TV." Williams then asked about the alleged altercation, and defendant was "vague." Williams then arrested defendant for domestic battery and violating a protective order.

¶ 53        On cross-examination, Williams could not recall whether defendant was dressed when he answered the door or whether Williams had to instruct defendant to put on clothes. When Williams first observed defendant, defendant was laying on the bed. When Williams first observed Krefft, she was in the motel's office. Williams responded to the dispatch in a "matter of minutes." Defendant gave his address as the motel room where Williams found him, which was the same room that Krefft provided as her address. The prosecutor objected to Krefft's address as hearsay, and the trial court struck that information. Williams did not call an ambulance for Krefft and did not transport her to receive medical attention.

¶ 54                                    D. Detective Johnny Thorns

¶ 55        Detective Johnny Thorns testified that he was employed by the Cook County sheriff's police department. On April 6, 2012, Krefft was brought to his office by an ASA. Thorns was asked whether there was also "a female detective with [him] during part of the time that [he] spoke" with Krefft, and he replied yes, his partner, Detective Karen Amegatcher. Thorns was asked "when Shanan Krefft gave you a handwritten statement, was it typed by [the] ASA," and he responded "[y]es, it was." The prosecutor then asked whether "that handwritten statement memorialize[d] her statements to you," and Thorns replied that it did. Thorns then identified People's exhibit No. 3 as "the statement that was typed up by the ASA from Shanan Krefft."

¶ 56        On cross, Thorns testified that the "handwritten statement that [he] referred to" was actually the typed statement identified as People's exhibit No. 3 and that there was no handwritten statement in this case. Thorns also testified that his partner "wasn't there for the statement that was taken." Only he and the ASA were present when Krefft's statement was "taken."

¶ 57        On cross-examination, Thorns testified that on April 6, the same day that the statement was taken, he had a conversation with Krefft that he memorialized in his police report. During this conversation, Krefft told him that she had filed a police report against her children's father, and the report classified the incident as a domestic battery. However, Krefft related that the incident was not a domestic battery, that she had not been battered, and that her ex-boyfriend had followed her for five days. Krefft was referring to the report made by Officer Williams on March 9, 2012, which covered the incidents in this case.

¶ 58        On redirect, Thorns testified that on April 6, 2012, when Krefft came to speak to him, she seemed "upset" and "distraught." Krefft was concerned that defendant was going to kill her and that defendant should be charged with the appropriate charge. On recross, Thorns admitted that Krefft's concern, that defendant be appropriately charged, was not reflected in his report.

¶ 59    The State then moved to admit People's exhibit Nos. 1, 2 and 3. The first two exhibits were orders of protection, and the third exhibit was Krefft's typed statement. The defense objected to the admission of People's exhibit No. 3, arguing that it had not stipulated to the exhibit's admissibility, that Krefft had no independent recollection, that there was no indicia of reliability, and that the statement did not satisfy the requirements for a prior inconsistent statement.

¶ 60    In response to defendant's argument that the statement did not qualify as a prior inconsistent statement, the trial court held that it was admitting the statement pursuant to section 115-10.2a of the Code of Criminal Procedure of 1963 (Code), which permits the admission of certain prior statements in domestic violence prosecutions. 725 ILCS 5/115-10.2a(a) (West 2010) (domestic violence exception). This exception applies only if the statement is "not specifically covered by any other hearsay exception." 725 ILCS 5/115-10.2a(a) (West 2010).

¶ 61    Reading the statute aloud, the trial court observed that, for this exception to apply, the court had to make a determination that the witness was unavailable. 725 ILCS 5/115-10.2a(c) (West 2010) (defining "[u]navailability"). The trial court then found that Krefft was, in fact, unavailable due both "to a lack of memory" (725 ILCS 5/115-10.2a(c)(3) (West 2010)) and a refusal "to testify concerning the subject matter" of her statement "despite an order of the court to do so." 725 ILCS 5/115-10.2a(c)(2) (West 2010). The trial court held that it was admitting the statement "[b]ased upon that" finding. The State made no objection to the trial court's finding that Krefft was unavailable or to the trial court's decision to admit the statement pursuant to the domestic violence exception, which required a determination that no other exception was available.

¶ 62    After the admission of its exhibits, the State rested. The defense made a motion for a directed finding, which the trial court denied.

¶ 63                                E. Marcos Reyes

¶ 64    Defendant called Marcos Reyes, the chief of the Maywood Office of the Cook County public defender, who testified that he was present on May 21, 2013, when defense counsel had a conversation with Krefft in a hallway outside of a courtroom. During this conversation, Krefft stated that, between March 2, 2012, and March 9, 2012, she never felt harassed by defendant. The defense then rested its case, and the trial court heard argument from both sides. During closing argument, defense counsel argued that the court had learned from the police that defendant lived in the same motel as Krefft and thus, when defendant drove by, "that's not stalking, they live together."

¶ 65                          F. Conviction and Sentencing

¶ 66    On June 14, 2013, the trial court found defendant not guilty of all counts but count V, thereby acquitting defendant of all counts of stalking. Count V charged defendant with violating a protective order by harassing Krefft. Explaining its ruling, the trial court indicated that it relied almost exclusively on Krefft's statement, particularly defendant's "threats to [her] to watch her back." The court stated that it found defendant had violated paragraph one of the protective order which prohibited harassment. On August 13, 2013, the trial court entered a written order which reflected that defendant was guilty of count V and not guilty of all the other counts.

¶ 67       On September 9, 2013, defendant filed posttrial motions to vacate the finding of guilty and to grant him a new trial, on several grounds, including that Krefft's statement lacked any indicia of reliability and was not properly admitted into evidence.

¶ 68       On October 31, 2013, the parties appeared for sentencing. First, the presentence report was corrected to indicate that defendant had lived with Krefft for five years, including for a brief time at the motel when this incident was occurring.

¶ 69       Next, the trial court heard argument on defendant's motions. Defense counsel argued that the finding of guilt on count V was inconsistent with the acquittal on the other counts. He also argued that the trial court relied on Krefft's statement and that her statement should not have been admitted into evidence "principally because when Shanan [Krefft] came to court she said she couldn't recall any of the information" in it. Defendant argued that he was "denied any opportunity to effectively cross-examine her" because she did not "remember anything." In addition, he argued that the statement lacked any "indicia of reliability." The trial court denied both motions and proceeded to sentencing.

¶ 70       In mitigation, the trial court heard from defendant that he had been employed and was supporting his family at the time of his arrest. In aggravation, the court considered his prior arrest for domestic battery. The court sentenced defendant to three years with IDOC, followed by one year of mandatory supervised release. Defendant filed a notice of appeal on November 19, 2013, and this appeal followed.

¶ 71                     ANALYSIS

¶ 72       Defendant's sole claim on appeal is that the trial court erred in admitting Krefft's prior statement into evidence, because its admission violated his sixth amendment right to confront and cross-examine the witnesses against him. The issue is whether Krefft was available for cross-examination on the sole charge of which defendant was convicted, namely, harassment in violation of a protective order. For the following reasons, we affirm.

¶ 73                     I. Forfeiture

¶ 74       As an initial matter, the State argues that defendant forfeited this sixth amendment issue by failing to raise it in the court below. Defendant argues that he did preserve this issue by challenging the admission of Krefft's statement in the trial court.

¶ 75       "Ordinarily, a defendant must both specifically object at trial and raise the specific issue again in a posttrial motion ***." *People v. Woods*, 214 Ill. 2d 455, 470 (2005) (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)); *People v. Nieves*, 193 Ill. 2d 513, 524 (2000) (State argued that defendant needed "to object on this particular ground before the trial court" and raise it again in a posttrial motion, and the supreme court "agree[d]").

¶ 76       For example, in *People v. Casillas*, 195 Ill. 2d 461, 491 (2000), our supreme court held that a defendant's objection in the trial court to the testimony of two witnesses "on the grounds of hearsay" did not preserve an objection to the same witnesses' testimony "on the grounds of unreliability." Similarly, in the case at bar, defendant's objection in the court below to Krefft's statement on the grounds that the statement did not fit various statutory exceptions to the hearsay rule did not preserve an objection to the same statement on sixth amendment grounds. Defendant forthrightly states in his reply brief to this court: "The State is correct, however, that

counsel did not specifically invoke the Sixth Amendment or Confrontation Clause." Thus, defendant did not preserve this issue for appeal.

¶ 77 However, this conclusion does not end our inquiry. Last year, our supreme court held that "three types of claims are not subject to forfeiture" in criminal cases. *People v. Cregan*, 2014 IL 113600, ¶ 16 (citing *Enoch*, 122 Ill. 2d at 190). The three types are: "(1) constitutional issues that were properly raised at trial and may be raised later in a postconviction petition; (2) challenges to the sufficiency of the evidence; and (3) plain errors." *Cregan*, 2014 IL 113600, ¶ 16 (citing *Enoch*, 122 Ill. 2d at 190). In the case at bar, defendant argues, first, that the sixth amendment issue qualifies for appellate review under the constitutional issue exception.[3]

¶ 78 Defendant argues that we should review the issue under the constitutional issue exception. Recently, our supreme court described this exception as follows:

> "[T]he constitutional-issue exception recognized in *Enoch* is based primarily in the interest of judicial economy. The Post-Conviction Hearing Act provides a mechanism for criminal defendants to assert that a conviction or sentence resulted from a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. 725 ILCS 5/122-1(a) (West 2008). Postconviction proceedings permit inquiry into constitutional issues that were not, and could not have been, adjudicated on direct appeal. [Citation.] If a defendant were precluded from raising a constitutional issue previously raised at trial on direct appeal, merely because he failed to raise it in a posttrial motion, the defendant could simply allege the issue in a later postconviction petition. Accordingly, the interests in judicial economy favor addressing the issue on direct appeal rather than requiring defendant to raise it in a separate postconviction petition." *Cregan*, 2014 IL 113600, ¶ 18.

¶ 79 However, the sixth amendment issue does not fall into this exception because, as the *Cregan* court explained, this exception covers only "constitutional issues *that were properly raised at trial*" (emphasis added) (*Cregan*, 2014 IL 113600, ¶ 16), and where defendant's only omission was "merely *** fail[ing] to raise it in a posttrial motion." *Cregan*, 2014 IL 113600, ¶ 18. In the case at bar, defendant failed to object *both* (1) at trial *and* (2) in a posttrial motion. Thus, under *Cregan*, defendant cannot claim the benefit of this exception.

¶ 80 However, defendant argues that, since the domestic violence exception permitted the State to use a testimonial hearsay statement against him, this statute violated his right under the confrontation clause and was unconstitutional as applied to him. "[G]enerally, a challenge to the constitutionality of a statute may be raised at any time." *People v. Cleary*, 2013 IL App (3d) 110610, ¶ 35. Thus, defendant argues that forfeiture does not apply.

¶ 81 The facts in *Cleary* are similar to the facts in the case at bar. As in our case, the trial court in *Cleary* admitted hearsay statements made by a domestic violence victim pursuant to section 115-10.2a of the Code. *Cleary*, 2013 IL App (3d) 110610, ¶ 1. As in our case, the defendant in *Cleary* argued that, pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004), admitting these statements violated his right under the confrontation clause of the sixth amendment. *Cleary*, 2013 IL App (3d) 110610, ¶ 1. As in our case, the defendant in *Cleary* failed to raise the sixth

---

[3]Defendant also argues, in the alternative, for plain error review for the first time in his reply brief. *People v. Ramsey*, 239 Ill. 2d 342, 412 (2010) ("although defendant did not argue plain error in his opening brief, he has argued plain error in his reply brief, which is sufficient to allow us to review the issue for plain error"); *People v. Williams*, 193 Ill. 2d 306, 347-48 (2000).

amendment issue at trial or in a posttrial motion. *Cleary*, 2013 IL App (3d) 110610, ¶ 35. The appellate court concluded that, since defendant was challenging the constitutionality of the statute as applied to him and since the constitutionality of a statute may be raised at any time, the defendant "has not forfeited appellate review of this issue." *Cleary*, 2013 IL App (3d) 110610, ¶ 35; *People v. McCarty*, 223 Ill. 2d 109, 123 (2006) ("as this court has noted in the past, a challenge to the constitutionality of a statute may be raised at any time"). Defendant is correct that, under *Cleary*, forfeiture does not apply. See also *People v. Martin*, 408 Ill. App. 3d 891, 895 (2011) (although the issue was not raised below, defendant did not forfeit his challenge to the admission of a domestic battery victim's statement, on the ground that her memory loss negated his confrontation rights).

¶ 82    Like the Second and Third Districts in *Martin* and *Cleary*, this court has also held that the forfeiture rule does not apply to as applied constitutional challenges to a statute. *People v. Emmett*, 264 Ill. App. 3d 296, 297 (1994). In *Emmett*, as in our case, the State argued that, since defendant failed to raise his constitutional challenge in the trial court, he forfeited the issue for appeal. *Emmett*, 264 Ill. App. 3d at 297. We acknowledged that, while it is generally true that a failure to raise an issue in the trial court will forfeit it on appeal, a constitutional challenge to a statute can be raised at any time. *Emmett*, 264 Ill. App. 3d at 297 (citing *People v. Bryant*, 128 Ill. 2d 448 (1989)). In *Emmett*, we observed that "[t]he State attempts to circumvent this rule by claiming that where a statute is being challenged as unconstitutional as applied to a particular defendant, rather than on its face, the [forfeiture] rule still applies." *Emmett*, 264 Ill. App. 3d at 297. We stated that we "found no case *** which makes this distinction," and we did not apply the forfeiture rule. *Emmett*, 264 Ill. App. 3d at 297; see also *People v. Rush*, 2014 IL App (1st) 123462, ¶ 2; *People v. Garvin*, 2013 IL App (1st) 113095, ¶ 13 (although defendant failed to raise an as applied challenge before the trial court, "a constitutional challenge to a statute may be raised at any time, and thus, the issue is properly before this court for consideration" (citing *People v. Bryant*, 128 Ill. 2d 448, 454 (1989))). Thus, defendant is correct that, under *Cleary*, *Martin*, and *Emmett* and similar cases, the forfeiture rule does not apply to the sixth amendment issue which defendant now raises on appeal.

¶ 83                              II. Standard of Review

¶ 84    Generally, we review a trial court's decisions concerning the admission of evidence or testimony only for an abuse of discretion. *In re Brandon P.*, 2014 IL 116653, ¶ 45 ("a trial court's ruling on evidentiary matters will not be reversed absent a clear abuse of discretion"); *People v. Lovejoy*, 235 Ill. 2d 97, 141 (2009); *People v. Sutherland*, 223 Ill. 2d 187, 281 (2006). However, claims under the sixth amendment often present questions of law, and we review those questions *de novo*. *Lovejoy*, 235 Ill. 2d at 141-42; *In re Rolandis G.*, 232 Ill. 2d 13, 23 (2008). For example, questions of whether the complained-of statements were testimonial or qualified as hearsay are questions of law, to which our supreme court has applied a *de novo* standard of review. *Lovejoy*, 235 Ill. 2d at 141-42; *In re Rolandis G.*, 232 Ill. 2d at 23 ("whether a statement is 'testimonial' is a question of law and our review, therefore, is *de novo*"). See also *People v. Leach*, 2012 IL 111534, ¶¶ 64, 67, 122 (our supreme court reviewed *de novo* whether a statement was hearsay and whether it was testimonial).

¶ 85    In contrast, whether a witness is available for cross-examination is a question to which our supreme court has applied the abuse-of-discretion standard of review generally applied to evidentiary questions. *In re Brandon P.*, 2014 IL 116653, ¶ 45. Last year, our supreme court

criticized an appellate court because it "essentially conducted its own *de novo* review of the record to find that [a child witness] 'appeared' for cross-examination at trial within the meaning of the confrontation clause." *In re Brandon P.*, 2014 IL 116653, ¶ 45. Our supreme court held that the appellate court should have reviewed "the trial court's ruling on [the witness's] availability for abuse of discretion." *In re Brandon P.*, 2014 IL 116653, ¶¶ 45, 47 (holding that "the trial court did not abuse its discretion in declaring [the witness] unavailable").[4]

¶ 86    However, *Brandon P.* is distinguishable from the case at bar because, in the case at bar, the trial court never ruled on whether the witness was available for purposes of the confrontation clause. Thus, we must consider, in the first instance, whether a witness may be unavailable for the statutory exception as the trial court ruled, but available for purposes of the confrontation clause. This is a purely legal question which we review *de novo*. *Lovejoy*, 235 Ill. 2d at 141-42.

¶ 87                                   III. Confrontation Clause

¶ 88    The sixth amendment's confrontation clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amend. VI. This clause guarantees "confrontation plus cross-examination of witnesses." *Perry v. New Hampshire*, 565 U.S. ___, ___, 132 S. Ct. 716, 723 (2012). "[T]he basic objective of the Confrontation Clause *** is to prevent the accused from being deprived of the opportunity to cross-examine the declarant about statements taken for use at trial." *Michigan v. Bryant*, 562 U.S. 344, 358 (2011). "[T]his bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford*, 541 U.S. at 42 (citing *Pointer v. Texas*, 380 U.S. 400, 406 (1965)). Cross-examination is a bedrock right because it is the engine by which an accused may expose "motive or bias or other factors that might influence testimony." *People v. Davis*, 337 Ill. App. 3d 977, 984 (2003); see also *People v. Kliner*, 185 Ill. 2d 81, 130 (1998) ("Any permissible matter which affects the witness's credibility may be developed on cross-examination.").

¶ 89    In *Crawford*, the United States Supreme Court held that, under the confrontation clause, a witness's out-of-court statement could be admitted only if the witness was available for cross-examination at trial or the defendant had had an opportunity to cross-examine her. *Crawford*, 541 U.S. at 68; see also *Ohio v. Clark*, 576 U.S. ___, ___, 135 S. Ct. 2173, 2179 (2015). Prior to *Crawford*, the rule had been that an unavailable witness's out-of-court statement could be admitted if it fell under a " 'firmly rooted hearsay exception' " or the statement had " 'particularized guarantees of trustworthiness.' " *Crawford*, 541 U.S. at 42, 60 (discussing and quoting *Ohio v. Roberts*, 448 U.S. 56, 66 (1980)); see also *Clark*, 576 U.S. at ___, 135 S. Ct. at 2179; *In re Rolandis G.*, 232 Ill. 2d 13, 23 (2008). In its 2004 *Crawford* decision, the United States Supreme Court rejected the *Roberts* rule, with its reliance on established hearsay exceptions, and thereby created a sweeping change in sixth amendment

---

[4]We do not find persuasive *People v. Garcia-Cordova*, 2011 IL App (2d) 070550-B, where the trial court held that the witness was not available at trial for cross-examination, and the appellate court applied its own *de novo* review in order to reach the opposite conclusion. *Garcia-Cordova*, 2011 IL App (2d) 070550-B, ¶¶ 32, 53, 62. This case is not persuasive because our supreme court has since held that an appellate court should review a trial court's ruling on a witness's availability only for an abuse of discretion. *In re Brandon P.*, 2014 IL 116653, ¶ 45.

jurisprudence. *Crawford*, 541 U.S. at 62 (the *Roberts* rule is "not what the Sixth Amendment prescribes"); *Clark*, 576 U.S. at ___, 135 S. Ct. at 2179 (in *Crawford*, "we adopted a different approach"); *Bullcoming v. New Mexico*, 564 U.S. ___, ___, 131 S. Ct. 2705, 2713 (2011) (describing *Crawford* as "[r]ejecting *Roberts*[ ]"); *In re Rolandis G.*, 232 Ill. 2d at 24 (in *Crawford*, "the United States Supreme Court overturned *Roberts* and devised a fundamentally new procedure for analyzing confrontation clause claims").

¶ 90    In *Crawford*, the Supreme Court held that "the principal evil at which the Confrontation Clause was directed" was the "use of *ex parte* examinations as evidence against the accused." *Crawford*, 541 U.S. at 50. "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Crawford*, 541 U.S. at 51. The Court held that "[s]tatements taken by police officers" during questioning "fall squarely" within the class of statements covered by the sixth amendment. *Crawford*, 541 U.S. at 52-53. In the case at bar, there is no dispute that the former girlfriend's statement was testimonial and thus fell squarely within the class of statements affected by *Crawford*.[5]

¶ 91    As previously noted, a testimonial out-of-court statement is admissible under *Crawford* only if: (1) the witness is available for cross-examination; or (2) the defendant had an opportunity to cross-examine her. *Crawford*, 541 U.S. at 68. Thus, Krefft's testimonial out-of-court statement was properly admitted under the sixth amendment only if she was available for cross-examination at trial, for purposes of the sixth amendment.

¶ 92                                      IV. Domestic Violence Exception

¶ 93    In the case at bar, the trial court found that the witness was unavailable for purposes of a hearsay exception, due to either her memory loss or her refusal to testify.

¶ 94    In the case at bar, the trial court admitted the statement into evidence pursuant to section 115-10.2a of the Code (725 ILCS 5/115-10.2a (West 2010)). In order for this exception to apply, the trial court had to find that the statement is "not specifically covered by any other hearsay exception." 725 ILCS 5/115-10.2a(a) (West 2010).

¶ 95    This statutory provision, "when enacted by our legislature [in 2003], was tailored to comport with sixth amendment confrontation clause requirements [citation] as delineated" under *Roberts*. *In re Rolandis G.*, 232 Ill. 2d at 23.[6] However, as we observed above, in 2004 the United States Supreme Court "overturned *Roberts* and devised a fundamentally new procedure for analyzing confrontation clause claims." *In re Rolandis G.*, 232 Ill. 2d at 24. This exception has not been amended substantively since *Crawford* was decided.[7] Defendant

---

[5]The State observes in its brief to this court: "In the present case, whether the victim's out-of-court statement was testimonial is not in dispute." The State noted that the issue was whether she was available "for cross-examination where she did not remember or recall particular facts about the offense."

[6]Although the court discussed section 115-10 in *In re Rolandis G.* and we are concerned here with section 115-10.2a, we are faced with the same issue of whether an exception that was designed to conform to *Roberts* now complies with *Crawford*.

[7]The exception was added by Public Act 93-443 (Pub. Act 93-443, § 10 (eff. Aug. 5, 2003)). It was amended by Public Act 97-1150 (Pub. Act 97-1150, § 635 (eff. Jan. 25, 2013)), only to change the reference to the Criminal Code of 1961 (720 ILCS 5/1-1 *et seq.* (West 2010)) to the Criminal Code of

claims that this exception, as now applied to him, violates his confrontation clause rights in a post-*Roberts* world.

¶ 96    In relevant part, this section states as follows:

"(a) In a domestic violence prosecution, a statement, made by an individual identified in Section 201 of the Illinois Domestic Violence Act of 1986 [(750 ILCS 60/201 (West 2010))] as a person protected by that Act, that is not specifically covered by any other hearsay exception but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule if the declarant is identified as unavailable as defined in subsection (c) and if the court determines that:

(1) the statement is offered as evidence of a material fact; and

(2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(3) the general purposes of this Section and the interests of justice will best be served by admission of the statement into evidence.

* * *

(c) Unavailability as a witness includes circumstances in which the declarant:
***

(2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or

(3) testifies to a lack of memory of the subject matter of the declarant's statement[.]" 725 ILCS 5/115-10.2a (West 2010).

¶ 97    On appeal, defendant does not contest that this exception applies to his former girlfriend's statement. Thus, there is no issue that the trial court properly found that her prior statement satisfied the requirements of this statute. 725 ILCS 5/115-10.2a (West 2010). However, satisfying a hearsay exception is no longer enough for admission. *Crawford*, 541 U.S. at 62 (the *Roberts* rule is "not what the Sixth Amendment prescribes"); *Clark*, 576 U.S. at ___, 135 S. Ct. at 2179 (in *Crawford*, "we adopted a different approach"); *Bullcoming*, 564 U.S. at ___, 131 S. Ct. at 2713 (describing *Crawford* as "[r]ejecting *Roberts*[ ]"). To be properly admitted, an out-of-court statement must satisfy both a hearsay exception and a defendant's rights under the sixth amendment. *Martin*, 408 Ill. App. 3d at 896.

¶ 98    As quoted above, this exception required the trial court to find that the witness was "unavailable," as the statute defines it. 725 ILCS 5/115-10.2a (West 2010). In *People v. Learn*, the appellate court held that, whether we were analyzing the confrontation clause or a hearsay exception, the United States Supreme Court's definition of availability was "equally applicable." *People v. Learn*, 396 Ill. App. 3d 891, 899 (2009). However, in *Learn*, the court was discussing a different hearsay exception which used the word "unavailable" generally but which did not define the term specifically for purposes of that exception, as the exception does here. *Learn*, 396 Ill. App. 3d at 898-99 (citing 725 ILCS 5/115-10 (West 2002)). Thus, that statement in *Learn* does not apply here.

¶ 99    In support of its argument that unavailability under this hearsay exception does not translate into unavailability under the sixth amendment, the State cites a number of

_____

2012 (720 ILCS 5/1-1 *et seq.* (West 2012)). Thus, this is the same section in substance which the legislature enacted to conform to *Roberts*.

pre-*Crawford* cases. *People v. Flores*, 128 Ill. 2d 66, 87 (1989); *United States v. Owens*, 484 U.S. 554, 556 (1988); *Delaware v. Fensterer*, 474 U.S. 15 (1985). However, the law that applied to those cases was the *Roberts* rule, which held that well-established hearsay exceptions also satisfied the sixth amendment. *Crawford*, 541 U.S. at 42, 60 (citing and quoting *Roberts*, 448 U.S. at 66). That rule was overruled in *Crawford*, thereby rendering those earlier cases less persuasive on the question facing us.

¶ 100    Neither party cites a case where a court considered whether a witness was unavailable for purposes of this particular hearsay exception but available for purposes of *Crawford*.[8]

¶ 101    In *Crawford*, the Court held that the confrontation "[c]lause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford*, 541 U.S. at 59 n.9. Since defendant was convicted solely of harassment that violated a protective order, the question is whether Krefft was "present at trial to defend or explain" her prior accusations of harassment. See *Crawford*, 541 U.S. at 59 n.9; *Learn*, 396 Ill. App. 3d at 899 ("We cannot conclude that a witness's mere presence in court to answer general questions without testifying about the alleged offense is sufficient to qualify as testimony ***.").

¶ 102    The Illinois Domestic Violence Act of 1986 (Act) states that harassment, for purposes of a protective order, occurs when a defendant knowingly acts in a way that would cause a reasonable person emotional distress and which does, in fact, cause emotional distress to the protected person, and which was not necessary to accomplish a purpose that was reasonable under the circumstances. 750 ILCS 60/103(7) (West 2010).

¶ 103    The Act states, in relevant part, that the following types of conduct are presumed to cause emotional distress:

> "(ii) repeatedly telephoning petitioner's *** home or residence;
>
> (iii) repeatedly following petitioner about in a public place or places;
>
> (iv) repeatedly keeping petitioner under surveillance by remaining present outside his or her home ***[.]" 750 ILCS 60/103(7) (West 2010).

¶ 104    In the case at bar, the witness did answer questions at trial about "telephoning," "following" and being kept "under surveillance," all of which qualify as harassment under the Act, which is the one count defendant was convicted of. 750 ILCS 60/103(7) (West 2010). First, Krefft responded to preliminary questions at trial, answering: that she had been in a relationship with defendant for five years; that she had four children; that defendant was the biological father of her two youngest sons; and that he also acted as a father to her other two children.

¶ 105    Next, she responded to questions concerning the offense of conviction, which was violating a valid protective order by harassment. With respect to that charge, she testified: that she had obtained a valid order of protection against defendant which prohibited him from harassing her; that, during March 2012, he drove by her residence five times and called her after each time; that she received a text message from him in March 2012 in which he stated

---

[8]The State relies heavily on *Martin*, where the particular hearsay exception at issue required the trial court to find that the witness was also " 'subject to cross-examination' " for purposes of that exception. *Martin*, 408 Ill. App. 3d at 894-95 (quoting 725 ILCS 5/115-10.1 (West 2006)). By contrast, the hearsay exception at issue here required the trial court to find that the witness was "unavailable" as the exception defined the term (725 ILCS 5/115-10.2a (West 2010) ("unavailable as defined" in this section)).

that he saw her; that, on March 8, 2012, she also received a text message from defendant; that, on March 9, 2012, she received more than one telephone call and text message from defendant; that, on March 9, 2012, she went to the front office of her motel and called the police, and defendant was subsequently arrested there; that she met with police officers on April 6, 2012, and informed them that defendant had driven by her residence in March 2012; and that she provided a written statement concerning the case.

¶ 106     The State argues that the cases cited by defendant are inapposite because they involved more of a lack of memory regarding the event, while, in the case at bar, the victim was able to answer some questions. *In re Brandon P.*, 2014 IL 116653, ¶ 47 ("There is no question" that the witness was unavailable where, after a few preliminary questions, he did not answer out of fear.); *In re Rolandis G.*, 232 Ill. 2d 13, 18, 22 (2008) (the State conceded on appeal that the witness was unavailable, where he answered a few preliminary questions and then refused to respond and defense counsel declined the court's invitation to cross). We agree.

¶ 107     Although, in the case at bar, the witness testified to a lack of memory and the trial court credited either her memory loss or refusal to testify in finding that she was unavailable to testify for purposes of the hearsay exception, the degree is different. The domestic violence exception defines "unavailability" specifically for purposes of this one exception as "persist[ing] in refusing to testify" or "testif[ying] to a lack of memory." 725 ILCS 5/115-10.2a (West 2010). Persisting in refusing to testify about some of the facts is different than an absolute or blanket refusal to testify about the offense. The Merriam-Webster Dictionary defines the word "persist" to mean "to continue to do something or to try to do something even though it is difficult or other people want you to stop." Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/persist (last visited Dec. 2, 2015). In the case at bar, Krefft "continue[d]" to assert a refusal to testify to some questions, thus satisfying the requirements of this particular hearsay exception, as the trial court found. However, she still answered both preliminary questions, as well as a number of questions about the offense of conviction described in her statement, thereby making her available under *Crawford*. *Crawford*, 541 U.S. at 59 n.9 (the confrontation "[c]lause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it"). Thus, this particular statutory exception, as applied to defendant, did not violate the sixth amendment.

¶ 108                                          CONCLUSION

¶ 109     For the foregoing reasons, we affirm the trial court's decision to admit the former girlfriend's testimonial hearsay statement into evidence pursuant to the domestic violence exception (725 ILCS 5/115-10.2a (West 2010)) and find that this statutory exception, as applied to defendant, did not violate his sixth amendment right to confrontation.

¶ 110     Affirmed.

¶ 111     JUSTICE McBRIDE, specially concurring.

¶ 112     I write to specially concur since I agree that the order of the circuit court should be affirmed. However, I disagree with the majority's analysis regarding forfeiture of constitutional issues. Therefore, I concur only in the decision to affirm, because no error occurred.